2024 WI App 42

# COURT OF APPEALS
## DECISION
## DATED AND FILED

### July 31, 2024

Samuel A. Christensen
Clerk of Court of Appeals

## NOTICE

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.**

---

**Appeal No. 2023AP76**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV1336

**IN COURT OF APPEALS
DISTRICT II**

---

RICHARD BRAUN,

    PLAINTIFF-RESPONDENT,

WISCONSIN ELECTIONS COMMISSION,

    DEFENDANT-RESPONDENT,

  V.

VOTE.ORG,

    PROPOSED-INTERVENOR-APPELLANT.

---

      APPEAL from an order of the circuit court for Waukesha County: MICHAEL P. MAXWELL, Judge. *Affirmed*.

      Before Neubauer, Grogan and Lazar, JJ.

¶1 GROGAN, J. Vote.org, the Proposed Intervenor, appeals from the circuit court's order denying its Motion to Intervene in a lawsuit Richard Braun filed against the Wisconsin Elections Commission (WEC) related to the WEC's approval of the National Mail Voter Registration Form (the Form) as an accepted method of voter registration in Wisconsin. On appeal, Vote.org asserts the court erred in denying its motion under both WIS. STAT. § 803.09(1) (2021-22)[1] (intervention as of right) and § 803.09(2) (permissive intervention). Because we conclude Vote.org does not meet the requirements for intervention as of right pursuant to § 803.09(1) and that the court did not erroneously exercise its discretion in denying Vote.org's motion for permissive intervention pursuant to § 803.09(2), we affirm.

## I. BACKGROUND

¶2 The merits of the underlying dispute regarding the WEC's approval of the Form and whether the Form complies with Wisconsin law are not at issue; however, the following facts related to that dispute are pertinent to our resolution of Vote.org's appeal.

¶3 On September 15, 2022, Braun filed an action against the WEC seeking a declaratory judgment that the WEC's approval of the Form violates WIS. STAT. § 6.33(1) and WIS. STAT. § 227.10. Braun also sought a permanent injunction that would require the "WEC [to] withdraw its approval of the [F]orm, cease and desist from failing to comply with WIS. STAT. §§ 6.33(1) and 227.10,

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

and correct the information in Wisconsin's Election Administration Manual indicating that the … Form is approved for use in Wisconsin[.]"

¶4      The Form is a national voter registration form the United States Election Assistance Commission makes available to voters seeking to register to vote,[2] and the Form has existed since 1993. *See* 52 U.S.C. § 20501 *et seq*. Unlike most states, Wisconsin is not required to utilize the Form because Wisconsin allows for same-day voter registration. *See* 52 U.S.C. § 20503(b). At some point, the WEC (or its predecessor), which is responsible for administering Wisconsin's election laws, *see* WIS. STAT. § 5.05(1), approved use of the Form for voter registration purposes in Wisconsin; however, the circumstances under which it did so, including when it did so, are unclear. Nevertheless, it appears the WEC has accepted the Form for voter registration for many years. In his Complaint, Braun alleged the WEC erred in approving the Form for use in Wisconsin because the Form, he says, "is missing several items" that WIS. STAT. § 6.33(1) requires, and it therefore does not comply with Wisconsin law.[3]

¶5      Vote.org, "a 501(c)(3) nonprofit, nonpartisan organization and technology platform dedicated to voter registration and get-out-the-vote efforts[,]" filed a motion seeking to intervene in the underlying action on September 28,

---

[2] *See About the EAC*, UNITED STATES ELECTION ASSISTANCE COMMISSION, https://www.eac.gov/about (last visited July 15, 2024).

[3] WISCONSIN STAT. § 6.33(1) provides that the WEC "shall prescribe the format, size, and shape of registration forms" and goes on to identify specific information the form must require. For purposes of this appeal, it is unnecessary to address those requirements in detail. Braun also asserted the WEC failed to engage in any rulemaking as it relates to information the Form requests but that Wisconsin law does not require and that the WEC therefore violated WIS. STAT. § 227.10 in approving the Form for use in Wisconsin. Further discussion of § 227.10 is likewise unnecessary for purposes of this appeal.

2022.[4] In support of its motion, Vote.org asserted it should be allowed to intervene because if Braun succeeds on the merits—in other words, if the Form is no longer an acceptable method for registering voters in Wisconsin—it will directly impact Vote.org's ability to assist Wisconsin voters with registering to vote, particularly those who are unable to do so online, unless Vote.org "divert[s] significant resources to modify its procedures for registering Wisconsin voters[.]"

¶6      In its motion, Vote.org asserted it had met all of the requirements for intervention as of right pursuant to WIS. STAT. § 803.09(1) because: (1) its Motion to Intervene was timely; (2) its interest in using the Form as a method for assisting Wisconsin voters was "sufficiently related to" the declaratory judgment action seeking to prohibit use of the Form; (3) if Braun succeeded in challenging use of the Form in Wisconsin, it would be detrimental to Vote.org's ability to register Wisconsin voters unless it expended significant financial resources to update its technological platform; and (4) no other party would adequately represent Vote.org's interests. As to representation of its interests, Vote.org asserted that although both Vote.org and the WEC sought to preserve use of the Form, its interests nevertheless diverged because it, unlike the WEC, would be subject to financial harm (in the form of costs associated with modifying its platform for Wisconsin voters) and also because the WEC is a government entity.

¶7      Regarding permissive intervention pursuant to WIS. STAT. § 803.09(2), Vote.org asserted its motion was timely, there would be "no undue delay or prejudice" because the matter was "in its earliest stages" of litigation, and

---

[4] The WEC did not object to Vote.org's Motion to Intervene, and it has likewise taken no position regarding Vote.org's appeal.

that it would "raise common questions of law and fact, including the core issue of whether the … Form complies with Wisconsin's election laws for voter registration forms."

¶8    After hearing arguments at a December 2022 hearing, the circuit court denied Vote.org's motion.  In doing so, the court began by addressing Vote.org's motion under WIS. STAT. § 803.09(1) (intervention as of right).  Although the court determined that Vote.org had established it satisfied the first two criteria under § 803.09(1)—that its Motion to Intervene was timely and that Vote.org had an interest related to the subject of the action because it sought to maintain utilization of the Form in Wisconsin—the court nevertheless determined that Vote.org could not meet the third and fourth criteria.

¶9    As to the third criterion for intervention as of right—whether disposition of the action would impair or impede Vote.org's ability to protect its interest[5]—the circuit court noted it had "concerns" because Vote.org "purposefully and intentionally created a system relying upon a card that may or may not be lawful under Wisconsin law," it "was Vote.org's choice … to craft this system without utilizing the one form that [it] knew would be in compliance with Wisconsin law because it was a Wisconsin created form[,]" and the Record was insufficient to establish the potential cost to Vote.org if it had to reconfigure its user platform for Wisconsin voters.

¶10    The circuit court also expressed "concerns" regarding whether Vote.org could establish the fourth criterion—that the existing parties would not

---

[5] *See **Helgeland v. Wisconsin Muns.**, 2008 WI 9, ¶38, 307 Wis. 2d 1, 745 N.W.2d 1.

adequately represent its interests[6]—and explained that it saw "the lawsuit [a]s a narrow question" of "whether or not [the Form] complies with Wisconsin law" and that it did not see how the WEC's "significant interest in arguing" that the Form complies with Wisconsin law differed from that of Vote.org even though the two parties may have had different reasons for desiring the same outcome. In the court's view, despite these differing reasons ("enforcing and protecting Wisconsin election law" as to the WEC and "protecting [its] system of operation as it relates to Wisconsin law and the ability to use the" Form as to Vote.org), both Vote.org and the WEC were "pursuing exactly the same outcome"—a determination that the Form "is acceptable under Wisconsin law." The court ultimately concluded there was no issue regarding inadequate representation, and it denied Vote.org's motion for intervention as of right based on Vote.org's failure to establish both the third and fourth criteria.

¶11 The circuit court likewise denied Vote.org's Motion to Intervene pursuant to WIS. STAT. § 803.09(2) (permissive intervention). The court noted "there isn't a great deal of standards or maps … available in the case law" as to factors a court should consider under the permissive intervention statute, but it determined that "it can't simply be that you show a common interest or common issue of factor [sic], issue of law and that you timely file because if that were--if the bar was so low as to that, then there would be no reason" for intervention as of right, and also that if that were the case, there would never be a reason "to pursue intervention by right because you could always get in through permissive intervention." The court also acknowledged Vote.org's suggestion that exercising

---

[6] *Id.*

6

its discretion under the permissive intervention statute required it to consider many of the same criteria it was required to consider in regard to intervention as of right, and after reconsidering those same factors within Vote.org's suggested framework, along with the cited case law, the court ultimately determined there was no basis to grant permissive intervention.

¶12    Vote.org now appeals.[7]

## II. DISCUSSION

¶13    On appeal, Vote.org renews its arguments that it is entitled to intervene as of right pursuant to WIS. STAT. § 803.09(1) or, alternatively, pursuant to § 803.09(2) as a matter of permissive intervention. We address each in turn and ultimately affirm the circuit court's denial of Vote.org's motion as to both intervention as of right and permissive intervention.

---

[7] After denying Vote.org's Motion to Intervene, the circuit court granted Vote.org's motion to file an amicus brief in support of the WEC's summary judgment motion regarding the merits of the underlying action. In September 2023, shortly before Vote.org's appeal was submitted on briefs to this court for review, the circuit court granted summary judgment in favor of Braun, concluding that use of the Form to register Wisconsin voters is unlawful. In a letter informing this court of the order, Vote.org confirmed that as a result of the circuit court's decision, "Vote.org must cease offering the [Form] to Wisconsin registrants—precisely the harm that Vote.org sought to intervene to prevent."

In a November 2023 letter, Vote.org further advised this court that the WEC would not be appealing the circuit court's grant of summary judgment in Braun's favor and further asserted that "[i]f Vote.org were granted intervention, it *would* appeal[,]" which it says confirms that the WEC did "not adequately represent Vote.org's interests[.]" We address this argument briefly in later footnotes.

*A. Intervention as of Right*

¶14    WISCONSIN STAT. § 803.09(1) governs intervention as of right and provides that:

> Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

Our supreme court has interpreted this statute as requiring that the movant meet the following four criteria: (1) "that the movant's motion to intervene is timely;" (2) "that the movant claims an interest sufficiently related to the subject of the action;" (3) "that disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest; and" (4) "that the existing parties do not adequately represent the movant's interest." *Helgeland v. Wisconsin Muns.*, 2008 WI 9, ¶38, 307 Wis. 2d 1, 745 N.W.2d 1.

¶15    Although the "movant must meet each of these four criteria to claim a right of intervention[,]" "the criteria need not be analyzed in isolation from one another, and a movant's strong showing with respect to one requirement may contribute to the movant's ability to meet" the other requirements. *Id.*, ¶39 (footnote omitted). There is, however, "'no precise formula for determining whether a potential intervenor'" is entitled to intervention as of right. *Id.*, ¶40 (citation omitted). Rather, "[t]he analysis is holistic, flexible, and highly fact-specific[,]" and "[a] court must look at the facts and circumstances of each case 'against the background of the policies underlying the intervention rule.'" *Id.* (citations omitted). Courts reviewing such motions must balance the conflicting public policies of allowing the original parties "'to conduct and conclude their

own lawsuit'" and allowing proposed intervenors "'to join a lawsuit in the interest of the speedy and economical resolution of controversies.'" ***Id.*** (citations omitted). "Whether to allow or to deny intervention as of right is a question of law that this court decides independently[,]" although we benefit from the circuit court's analysis. ***Id.***, ¶41.

### 1. Timeliness

¶16 Whether a movant's motion to intervene is timely "is left to the discretion of the circuit court." ***Id.***, ¶42. The circuit court here determined that Vote.org timely filed its motion for intervention, and the parties do not dispute that determination. We likewise conclude that Vote.org's Motion to Intervene was timely as it was filed thirteen days after Braun filed the Summons and Complaint.

### 2. Interest Related to the Subject of the Action

¶17 The second criterion Vote.org must establish is that it has "an interest sufficiently related to the subject of the action[.]" ***Id.***, ¶38. "[T]he identification of a movant's asserted related interest will affect the analysis of the third and fourth criteria as well, because all three of these criteria are defined in part by the movant's asserted interest." ***Rise, Inc. v. WEC***, No. 2022AP1838, unpublished slip op. ¶18 (WI App July 7, 2023).[8]

¶18 There is "[n]o precise test … 'for determining which type of interest is sufficient to allow a party to intervene as a matter of right.'" ***Helgeland***, 307

---

[8] Although ***Rise, Inc. v. WEC***, No. 2022AP1838, unpublished slip op. (WI App July 7, 2023), is unpublished and therefore carries no precedential value, it was authored by a three-judge panel, and we may therefore consider its persuasive authority pursuant to WIS. STAT. RULE 809.23(3)(b).

Wis. 2d 1, ¶43 (citation omitted). Accordingly, when considering whether a movant has a sufficiently related interest, "courts employ a 'broad[], pragmatic approach'" under which "'the interest sufficient to allow the intervention'" is viewed "'practically rather than technically.'" *Id.*, ¶43 (citation omitted). The second criterion serves as "'a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Id.*, ¶44 (citation omitted). "[A] claimed interest does not support intervention[,]" however, "if it is only remotely related to the subject of the action." *Id.*, ¶45. Rather, "[t]here must be some sense in which the interest is 'of such direct and immediate character that the intervenor will either gain or lose by the direct operation of the judgment.'" *Id.* (citation omitted). "A movant may intervene as of right when the movant needs 'to protect a right that would not otherwise be protected in the litigation.'" *Id.* (citation omitted).

¶19 In reviewing this criterion, the circuit court looked to the shared interest between Vote.org and the WEC in seeking continued use of the Form as a valid means of registering voters in Wisconsin and determined that this shared interest established that Vote.org's interest was sufficiently connected to the issues raised in Braun's lawsuit. Like the circuit court, we agree that Vote.org's asserted "interest [is] sufficiently related to the subject of the action[.]" *See id.*, ¶38.

¶20 The primary subject of the underlying action presents a straightforward question requiring statutory interpretation: Whether the Form complies with the requirements imposed by Wisconsin law—specifically, whether it complies with WIS. STAT. § 6.33(1) and, if it does not, whether the WEC complied with WIS. STAT. § 227.10's rulemaking requirements in approving the Form for use. In its Motion to Intervene, Vote.org explained that it "relies on the … Form to help register voters in Wisconsin[,]" particularly those who are

ineligible to or prefer not to register online, and that revocation of the Form as an acceptable means of registering voters will "impede [its] direct operations and inhibit its efforts to help register Wisconsin voters." Vote.org further asserted that if the Form is invalid in Wisconsin, it would be required "to divert resources from its other registration and get-out-the-vote activities in order to build new registration processes in Wisconsin." Because the sole subject of Braun's declaratory judgment action is the validity of the precise form Vote.org uses to assist Wisconsin voters with registering to vote, we conclude that Vote.org's asserted interest—continued acceptance of the Form in Wisconsin—is directly related to the subject of the action.[9] Accordingly, Vote.org has established the second criterion for intervention as of right. *See* ***Helgeland***, 307 Wis. 2d 1, ¶38.

### 3. Disposition May Impair or Impede Ability to Protect Interest

¶21 Next, Vote.org must establish "that disposition of the action may as a practical matter impair or impede [its] ability to protect" the asserted interest identified above. *See* ***id.***, ¶38. As with the second criterion, courts "take a

---

[9] The Dissent at ¶52 ignores that Vote.org's ultimate interest—establishing that the Form complies with Wisconsin law—is the same as the WEC's interest and position in this matter. That the WEC may have "numerous and varied" "specific powers" and that an adverse ruling might impact Vote.org and the WEC differently, *see* Dissent, ¶¶49-52, does not negate that fact despite the Dissent's protestation.

In ignoring that Vote.org and the WEC share the same ultimate interest, the Dissent chooses to instead invent a diverse interest on behalf of Vote.org by discussing that organization's "objectives" and asserts that Vote.org brings a "unique perspective[.]" Dissent, ¶¶52, 54. It also contends that the WEC is political and Vote.org is not. But is that actually true? And, even if it is, it still does not change the fact that both parties share the same interest in the underlying matter. The Dissent also says the resulting harm to the WEC and Vote.org will differ, and it argues that the WEC's choice *not* to appeal proves that the WEC and Vote.org are seeking different outcomes. *See* Dissent, ¶53. In refusing to simply apply the well-established law governing intervention and acknowledge that the WEC and Vote.org share the same interest, the Dissent evokes the well-known Shakespearean maxim of "protesting too much." *See* WILLIAM SHAKESPEARE, HAMLET act 3, sc. 2 ("The lady doth protest too much, methinks."). Methinks.

pragmatic approach and focus on the facts of each case and the policies underlying the intervention statute." *Id.*, ¶79.

¶22    Vote.org asserts it has established this criterion because a decision in Braun's favor—that the Form can no longer be used to register Wisconsin voters—will "prevent Vote.org's continued use of the [Form] in Wisconsin," which, it says, will result in "a practical impairment to its interest[.]" According to Vote.org, because it "has an interest in using the [F]orm in Wisconsin … it follows directly that … its interest will be impaired by a judgment banning that [F]orm's use statewide" and that the circuit court therefore erred in concluding otherwise.

¶23    Braun, to the contrary, asserts that Vote.org has not established that disposition will "impair or impede its ability to protect an interest related to this action" because "the Form is not the only means by which Wisconsinites can register to vote[,]" and therefore "Vote.org's interest in assisting citizens to register to vote is and will remain unimpeded." Braun further argues that "Vote.org's real complaint appears to be … that it will have to switch from the Form" to one that complies with Wisconsin law and that Vote.org simply does not want to incur any financial expenditures that would be required to do so.

¶24    We agree with Braun to the extent he suggests that use of the Form is not the sole method by which Wisconsin voters can register to vote. However, the third criterion under our analysis looks to whether "disposition of the action may as a practical matter impair or impede the movant's ability to protect *that interest*"—in other words, the specific interest identified in regard to the second criterion. *See id.*, ¶38 (emphasis added). As discussed above, Vote.org's specific interest at issue here is whether the Form complies with Wisconsin's voter

registration laws—not whether there are *other* methods of registration available to voters or whether there are other forms available that Vote.org could use to further its broader interest of helping voters register to vote—and resolution of the action will definitively answer whether the Form complies.[10]  Accordingly, we conclude that Vote.org has established the third criterion.

### 4.  Whether Existing Parties Adequately Represent Interest

¶25     Finally, to establish it is entitled to intervention as of right, Vote.org must show "that the existing parties do not adequately represent [its] interest." *Id.*, ¶38.  Although establishing that the existing parties inadequately represent the movant's interest is a relatively low bar, we do not treat the requirement "'as so minimal as to write the requirement completely out of the rule.'"  *Id.*, ¶85 (citation omitted).  Rather, we must "blend[] and balance[]" the fourth criterion with the first three.  *Id.*, ¶86.  Where the movant's "interests are substantially similar to interests already represented by an existing party, such similarity will weigh against" the movant.  *Id.*

¶26     To determine "whether an existing party adequately represents a movant's interest," courts look to whether "there is a showing of collusion between the representative and the opposing party; if the representative fails in the

---

[10] Like Braun, the circuit court focused its analysis of the third criterion on the availability of other methods or forms Vote.org could use to assist voters with voter registration. Specifically, the court questioned why it should "be concerned with a national organization that purposefully and intentionally created a system relying upon a card that may or may not be lawful under Wisconsin law" and stated that it did not "think that as a practical matter, the Court should be concerned with the fact that there's a national system in place that utilizes a form that may or may not be in compliance with Wisconsin law."  It went on to explain that it "was Vote.org's choice … to craft this system without utilizing the one form that [it] knew would be in compliance with Wisconsin law because it was a Wisconsin created form."  The interest here, however, is establishing whether the Form complies with Wisconsin law.

fulfillment of his duty; or if the representative's interest is adverse to that of the proposed intervenor." *Id.*, ¶87. We must also consider whether either of the following two rebuttable presumptions applies. *Id.*, ¶89. First, courts typically presume adequate representation "when a movant and an existing party have the same ultimate objective in the action." *Id.*, ¶90. "Second, 'when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity.'" *Id.*, ¶91 (citation omitted). If either presumption applies, a more "compelling showing" of inadequate representation may be required. *Id.*, ¶86.

¶27 Vote.org asserts that neither of the presumptions requiring a more "compelling showing" applies and that it is subject only to the minimal showing. To that end, Vote.org argues that the "WEC does not adequately represent [its] interest in continuing to use the [Form] in Wisconsin" because it "is likely to litigate more vigorously than [the] WEC because … it will suffer more direct and particularized harms than [the] WEC" if the Form is deemed to violate Wisconsin law. Vote.org also asserts that it has "more at stake" than the WEC and looks to *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 601 N.W.2d 301 (Ct. App. 1999), to support both propositions as well as its position that neither of the aforementioned presumptions requiring a more "compelling showing" apply. We disagree.

¶28 At the outset, we note that Vote.org has not established—or even alleged—collusion between the WEC and Braun. *See Helgeland*, 307 Wis. 2d 1, ¶¶87-88. Likewise, while Vote.org asserts that an adverse outcome will have a

greater impact on it than on the WEC, under the facts present here, this is insufficient to establish that the WEC's interest is actually adverse to its own.[11] *See id.* Vote.org has also failed to show that the WEC "has failed in the fulfillment of its duty" in litigating its position as to what it believes to be the correct interpretation of the statutes at issue. *See id.* Vote.org's failure to establish any of these factors suggests that the WEC adequately represents its interests.

¶29 We must also consider whether either of the aforementioned rebuttable presumptions applies. *See id.*, ¶89. In regard to the first presumption,

---

[11] For example, Vote.org argues that it, unlike the WEC, will "need to hire a software developer to redesign parts of its website" if the Form is found not to comply with Wisconsin law. Although the impact on Vote.org and the WEC may differ, it does not inherently follow that their interests are adverse, particularly where both parties ultimately seek to establish that the Form *does* comply with Wisconsin law.

Vote.org also suggests that the WEC's decision not to appeal confirms that the WEC did not adequately represent its interests. We disagree. Here, Vote.org and the WEC sought the same statutory interpretation and the same ultimate approval and continued use of the Form in Wisconsin. Their interest on that point is identical. If we were to conclude that a proposed intervenor—particularly one whose identified interest is otherwise identical to that of the representative party—could establish inadequate representation by simply asserting that it might appeal in the face of an adverse decision whereas the representative party might choose not to appeal, we would effectively write the fourth criterion out of existence because *any* proposed intervenor could simply assert that it might take a different approach regarding whether or not to appeal, thereby establishing inadequate representation without a showing of anything more. The Dissent's suggestion that "the conflict between WEC's decision not to appeal and Vote.org's desire to do so creates an independent basis for concluding that WEC is not an adequate representative of Vote.org's interest[,]" Dissent, ¶62, simply confirms this point. To conclude as the Dissent does—that taking a different approach as to whether to file an appeal ipso facto renders a representative party's interest and a proposed intervenor's interest unaligned (even where both parties seek the exact same legal outcome)—would be to treat the fourth requirement "'as so minimal as to write the requirement completely out of the rule.'" *See Helgeland*, 307 Wis. 2d 1, ¶85 (citation omitted). We decline to do so as it is clear that a proposed intervenor must establish that all *four* elements are present.

Moreover, a representative party might choose not to appeal for any number of reasons despite having the same interests as the proposed intervenor. That alone cannot constitute a basis upon which to grant intervention.

Vote.org asserts the WEC does not adequately represent its interests because its interest in establishing that the Form complies with Wisconsin voter registration laws is not *identical* to that of the WEC because it, unlike the WEC, uses the Form to register voters. Thus, it says, the WEC does not "have the same ultimate objective in the action." *See id.*, ¶90. We conclude, however, that this presumption applies because the WEC and Vote.org share—even if for somewhat different reasons—the same ultimate objective in this case: To establish that the Form complies with Wisconsin law (in other words, that continued use of the Form to register Wisconsin voters is lawful). While their respective *uses* of the Form may be different, it does not inherently follow that they have diverging *interests*.

¶30 The second presumption—that representation is adequate "'when the putative representative is a governmental body or officer charged by law with representing'" Vote.org's interests—also counsels against intervention. *See id.*, ¶91 (citation omitted). The WEC is a governmental body represented by the Department of Justice in this matter, and both entities "are charged by law with the duty of representing the rights of electors so that all may enjoy the benefits of the correct application of the laws governing elections." *See Rise, Inc.*, No. 2022AP1838, ¶36. In that regard, the WEC's position as to the "correct application of the laws governing elections" in this matter is that the Form complies with Wisconsin's voter registration laws—the exact position that Vote.org presents. *See id.* While these presumptions are rebuttable, Vote.org has not otherwise made a "compelling showing" that the WEC does not adequately represent its rights. *See Helgeland*, 307 Wis. 2d 1, ¶¶86, 89.

¶31 In concluding these presumptions of adequate representation apply and that Vote.org has not made a "compelling showing" that it has overcome those

presumptions, we necessarily also reject Vote.org's argument that it is subject only to the minimal standard. While Vote.org is correct that we said in *Wolff* that the proposed intervenor was not adequately represented by the existing parties because it "may be in a position" to litigate "more vigorously" and because it "may have more at stake" than the representative, *id.*, 229 Wis. 2d at 748-49, *Wolff* did not address whether either of the two presumptions applied. And even if we were to determine that neither presumption applied and Vote.org therefore need only meet the minimal showing that its interest was not adequately represented, we would still reach the same conclusion.

¶32 Here, Vote.org says it "has much more to lose in this litigation than does WEC" because "WEC's obligation is simply to enforce the voter registration rules *as the courts construe them*[,]" and the WEC will simply "conform to the courts' ruling and revise its position on what the law provides." (Emphasis added.) Yet, Vote.org's ability—or inability—to continue its use of the Form *also* depends entirely on how the courts construe Wisconsin's voter registration laws as that construction will determine whether or not the Form complies with Wisconsin law. Consequently, the courts' ultimate statutory construction may impact Vote.org and the WEC differently, but this does not fundamentally mean that Vote.org has "more to lose" or has "more at stake."

¶33 Additionally, while Vote.org posits that it is likely to litigate more vigorously than the WEC because it may be more greatly impacted should the courts construe Wisconsin's voter registration laws in a manner that invalidates use of the Form in Wisconsin, the underlying issue in this case is ultimately a matter of statutory construction. Under these circumstances, this court is not convinced that Vote.org's claim that its ability to assert more vigorous arguments in a statutory interpretation case renders the WEC unable to satisfactorily

17

represent Vote.org's interests. The WEC advocated for the same position on statutory construction and the same result as Vote.org.

¶34 We recently reached a similar conclusion regarding adequate representation in *Rise*—an opinion Vote.org itself says is highly instructive to our analysis here—where a proposed intervenor raised arguments akin to those that Vote.org makes, and we agree that that analysis is persuasive.[12] *See Rise, Inc.*, No. 2022AP1838, ¶¶31-44. In *Rise*, we determined that both presumptions addressed above "magnified" "the presumption of adequate representation" because, inter alia, the WEC's position in that case "aligned with the position that the" proposed intervenors took on the merits of the underlying case—that the

---

[12] We decided *Rise* after briefing concluded in this case. In its initial brief, Vote.org stated that "[a] decision in the appellants' favor on the inadequate-representation issue" in that case "would thus be difficult to reconcile with a different result here." The reverse, however, is also true: A decision against the appellants in *Rise* would be difficult to reconcile with a decision in Vote.org's favor in this case. The Dissent suggests that *Rise* is nevertheless distinguishable based on "the interplay between the intervention of right factors[.]" Dissent, ¶60 n.6. While the interplay between the factors may not be identical, factual differences will *always* be present in any case in which a party seeks to intervene. This does not inherently mean, however, that the analytical framework does not continue to apply, which is likely the reason that Vote.org initially sought to tie its future to a possible favorable outcome in *Rise*.

The Dissent also relies heavily on Vote.org's purported financial interest/harm—that it would need to "devote staff time and money to redesign parts of its website." Dissent, ¶¶52, 59-60. However, there is no evidence in the Record indicating the extent to which it would need to "devote staff time," and there is likewise no evidence of even an estimated cost, if any, to redesign the website. Vote.org says only that it would have to "dedicate staff time and resources" "to create … new software." We also note that the Record reflects that Vote.org had *five* attorneys appear for the summary judgment hearing. Assuming those attorneys were not attending pro bono, their attendance tends to discredit Vote.org's assertions that its financial interests were a primary concern as an intervenor. Vote.org also indicated that, as of September 2023, it "ceased" using the Form; consequently, any financial interest harm presumably no longer exists. The Dissent nevertheless suggests that the fact that Vote.org is no longer using the Form means that its purported injury is now "concrete." Dissent, ¶54 n.4. Again, however, the Record fails to establish that Vote.org has incurred—or will incur—any financial harm/injury at all, and more importantly, it does not alter the simple fact that Vote.org and the WEC ultimately sought the same outcome in the circuit court.

circuit court "reject the relief sought by Rise and thus maintain as the status quo the [WEC's] interpretation of 'address'" under Wisconsin's voter registration laws. *Id.*, ¶¶35-36. The same is true here: Both Vote.org and the WEC seek to maintain the WEC's position that the Form complies with Wisconsin's voter registration laws. We also concluded in *Rise*, as we do here, that the WEC was "charged by law with the duty of representing the rights of electors so that all may enjoy the benefits of the correct application of the laws governing elections." *Id.*, ¶36. The proposed intervenors in *Rise*, like Vote.org, relied heavily on *Wolff* to support their position that their interests were not adequately represented. *Rise, Inc.*, No. 2022AP1838, ¶¶38-40. As in *Rise*, we reject those arguments here. *See id.*

¶35 Based on the foregoing, we conclude that Vote.org is not entitled to intervention as of right, and the circuit court therefore did not err in denying Vote.org's motion as it relates to WIS. STAT. § 803.09(1).

*B. Permissive Intervention*

¶36 Having determined that Vote.org was not entitled to intervention as of right, we turn next to Vote.org's argument that the circuit court erroneously exercised its discretion in denying permissive intervention pursuant to WIS. STAT. § 803.09(2), which provides, as relevant, that:

> Upon timely motion anyone may be permitted to intervene in an action when a movant's claim or defense and the main action have a question of law or fact in common…. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

We review the circuit court's decision regarding permissive intervention under the erroneous exercise of discretion standard. *Helgeland*, 307 Wis. 2d 1, ¶120. We

will affirm a discretionary decision so long as the court "'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" *Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, ¶41, 299 Wis. 2d 81, 726 N.W.2d 898 (citation omitted).

¶37 WISCONSIN STAT. § 803.09(2) requires that the circuit court consider three criteria in making its discretionary determination. Specifically, a person "may be permitted to intervene," in the court's discretion: (1) "Upon timely motion"; (2) Where the "movant's claim or defense and the main action have a question of law and fact in common"; and (3) "After the court '[i]n exercising its discretion' considers 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *See Rise, Inc.*, No. 2022AP1838, ¶47; *see also Helgeland*, 307 Wis. 2d 1, ¶120 ("As the text of WIS. STAT. § 803.09(2) itself makes clear, the circuit court has discretion to decide whether a movant may be permitted to intervene when the movant's claim or defense and the main action have a question of law or fact in common."). Permissive intervention, unlike intervention as a matter of right, requires only that the movant be a proper party, not a necessary party. *City of Madison v. WERC*, 2000 WI 39, ¶11 n.11, 234 Wis. 2d 550, 610 N.W.2d 94. While the court must consider these factors in "determin[ing] whether a person is eligible to be considered for permissive intervention," a court, in exercising its discretion, need not permit a movant to intervene simply because the movant meets each of these factors. *Rise, Inc.*, No. 2022AP1838, ¶47.

¶38 The circuit court here denied permissive intervention after considering the same criteria required for intervention as of right, as Vote.org suggested it should do, along with whether Vote.org had established an issue of

common law and fact. In exercising its discretion, the court explained that it is insufficient to "simply … show a common interest or common issue of factor [sic], issue of law and that you timely file because" that would render WIS. STAT. § 803.09(1) unnecessary. It then went on to explain why the criteria that counseled against intervention as of right also weighed against permissive intervention, particularly focusing on the adequacy of the WEC's representation in this matter given that the matter was "about the discrete and narrow issue of" whether the Form "that WEC has signed off on using [is] in compliance with Wisconsin law[.]"

¶39 Having reviewed the relevant law, the Record, and the parties' arguments, we cannot conclude that the circuit court, despite a somewhat perfunctory analysis, erroneously exercised its discretion in reaching its decision.[13]

¶40 First, as with the analysis of intervention as of right, permissive intervention requires that the motion to intervene be timely. While the circuit court did not explicitly reaffirm that Vote.org's motion was timely for purposes of its permissive intervention analysis, it is nevertheless clear that the court reconsidered the intervention as of right factors, and under that analysis, it had determined that Vote.org's motion was, without question, timely. Second, in questioning whether timeliness and a showing of a common issue of fact or law alone are sufficient to warrant permissive intervention, it is at least implicit that the court determined that Vote.org had established the existence of a common

---

[13] We remind the circuit courts that in exercising their discretion, it is imperative that they are explicit in tying their analysis to the criteria or factors to be considered in exercising that discretion as this will aid the appellate courts on review. *See, e.g.*, **State v. X.S.**, 2022 WI 49, ¶33, 402 Wis. 2d 481, 976 N.W.2d 425 ("The exercise of discretion incorporates a process of reasoning *and proper explanation*." (emphasis added)).

issue of fact or law. This is particularly so in light of the court's discussion of the overlap between Vote.org's and the WEC's interest in seeking the same outcome in the underlying matter.

¶41 Similarly, while the circuit court did not use the specific words "unduly delay" or "prejudice" in its permissive intervention analysis, the court questioned the parties and heard argument about undue delay during the course of the motion hearing. Moreover, in announcing its denial of permissive intervention, the court confirmed that its decision was based on "the framework that Vote.org has provided *as well as consider[ation of] the case law that was filed* and the plaintiff's argument." (Emphasis added.) There is no question that the case law submitted in regard to Vote.org's Motion to Intervene addressed undue delay and prejudice. We therefore "conclude that the circuit court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach in denying permissive intervention." *See Rise, Inc.*, No. 2022AP1838, ¶50. Accordingly, the court did not erroneously exercise its discretion.

¶42 In reaching this conclusion, we reject Vote.org's suggestion that the circuit court "failed to apply the appropriate legal standard" because it "questioned whether the [WIS. STAT. §] 803.09(2) test for permissive intervention is the correct one." While the court may have questioned whether establishing that Vote.org's "claim or defense and the main action have a question of law or fact in common[,]" *see* § 803.09(2), is alone sufficient to warrant permissive intervention, it is clear that the court did not make its decision on this basis alone. Moreover, as noted above, the court was not required to exercise its discretion in Vote.org's favor simply because it established a common issue of law and fact. *See Rise, Inc.*, No. 2022AP1838, ¶47 (permissive intervention not required even where

movant establishes all three factors to be considered under § 803.09(2)).  We also reject Vote.org's argument that the circuit court "looked *explicitly* to the factors governing intervention *as of right*" and concluded "that because Vote.org had not shown a right to intervene, it should not be permitted to intervene permissively." (First emphasis added.)  As explained above, it is clear that the court considered the multiple relevant criteria in denying Vote.org's motion for permissive intervention.

¶43     Finally, to the extent the circuit court referenced Vote.org's decision to "intentionally create[] a system in reliance on a particular form that may or may not be in accordance with Wisconsin law" in denying permissive intervention, we interpret this commentary not as faulting Vote.org for relying on the WEC's longstanding position that the Form was valid in Wisconsin, as Vote.org suggests, but rather as being in response to—and in rejection of—Vote.org's argument that the WEC would not adequately represent its interest simply because it, unlike the WEC, would be required to modify its user platform for Wisconsin residents if it could no longer utilize the Form in assisting Wisconsin voters.[14]

---

[14] Vote.org also faults the circuit court for failing to address the WEC's longstanding approval of the Form, the apparent fact that "before this lawsuit … no one had questioned the legality of the [Form's] use in Wisconsin[,]" or "why Vote.org should have anticipated this lawsuit and its underlying legal theory years ago, when it was designing its web platform or software" in exercising its discretion as to permissive intervention.  However, the WEC's (and its predecessor's) apparent longstanding approval of the Form, the apparent lack of any prior litigation related to the Form's use in Wisconsin, and Vote.org's decision-making process in utilizing the Form in Wisconsin are wholly irrelevant to the underlying statutory interpretation issue of whether the Form complies with Wisconsin law.  The court therefore did not err in failing to address or consider those issues in exercising its discretion.

### III. CONCLUSION

¶44 Based on the foregoing, we conclude that Vote.org was not entitled to intervention as of right because, despite establishing the first three required factors, it failed to establish that the WEC did not adequately represent its interest in the underlying action. We likewise conclude that the circuit court did not err in exercising its discretion when it denied Vote.org's motion for permissive intervention.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.

No.    2023AP76(D)


¶45    NEUBAUER, J.    (*dissenting*). I agree with the majority that Vote.org satisfied the first three requirements to intervene in this lawsuit as of right under WIS. STAT. § 803.09(1).  But unlike the majority, I conclude that Vote.org also established the fourth requirement—that neither party to this lawsuit would "adequately represent[]" its interest. *See id.*  Accordingly, I would reverse the circuit court's order denying Vote.org's intervention motion under § 803.09(1).  Reversal is also warranted because the court erroneously exercised its discretion in denying Vote.org's alternative request for permissive intervention under § 803.09(2).

¶46    Part I below analyzes Vote.org's request for intervention as of right based on the record as it existed when the circuit court denied Vote.org's motion. Part II discusses how events after the court's ruling—in particular its grant of summary judgment to Braun during the pendency of this appeal, and the decision by the Wisconsin Elections Commission (WEC) not to appeal that ruling—provide separate grounds for concluding that WEC does not adequately represent Vote.org's interest and justifies a remand to allow Vote.org to appeal.  Part III addresses the court's decision on permissive intervention.

### I.    Vote.org Is Entitled to Intervene as of Right Because WEC's Representation of Its Interests May Be Inadequate.

> A. *Vote.org's burden to show that WEC's representation of its interests is minimal.*

¶47    On the issue of inadequate representation, Vote.org's burden was to show that WEC's representation of its interest "'may be' inadequate." *See Wolff*

*v. Town of Jamestown*, 229 Wis. 2d 738, 747-48, 601 N.W.2d 301 (Ct. App. 1999) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). As the majority recognizes, Wisconsin case law describes this burden as "minimal," though not nonexistent. *See Helgeland v. Wisconsin Muns.*, 2008 WI 9, ¶85, 307 Wis. 2d 1, 745 N.W.2d 1. It is also linked to the other factors pertinent to intervention of right. *Id.*, ¶39 ("[T]he [factors] need not be analyzed in isolation from one another, and a movant's strong showing with respect to one requirement may contribute to the movant's ability to meet other requirements as well." (footnote omitted)).

¶48 In *Helgeland*, our supreme court identified several circumstances in which an existing party may not adequately represent a proposed intervenor's interest: (1) if there is collusion between the existing parties; (2) if the existing party "fails in the fulfillment of [its] duty"; and (3) "if the [existing party's] interest is adverse to that of the proposed intervenor." *Id.*, ¶87. The majority bases its conclusion that Vote.org did not establish inadequacy in large part on its determination that Vote.org did not establish that any of these circumstances exists here. Majority, ¶28. But that is not the end of the inquiry because these circumstances, which were collected in *Stadin v. Union Electric Co.*, 309 F.2d 912, 919 (8th Cir. 1962), are not "a comprehensive list of the circumstances that can establish inadequacy of representation." 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1909 (3d ed. 2024) ("The wide variety of cases that come to the courts make it unlikely that there are three and only three circumstances that would make representation inadequate and

2

suggest that adequacy of representation is a very complex variable.").[1] "The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties." ***Id.***

> B.  *Vote.org has an independent, specific, and concrete interest in the Form's continued viability as a means of registering voters in Wisconsin.*

¶49   WEC's and Vote.org's respective interests are sufficiently divergent to support a conclusion that WEC may not be an adequate representative of Vote.org in this case.  WEC is charged generally with "responsibility for the administration of [WIS. STAT.] chs. 5 to 10 and 12 and other laws relating to elections and election campaigns."  WIS. STAT. § 5.05(1).  Its specific powers are numerous and varied; among other things, it is authorized to (1) promulgate rules "for the purpose of interpreting or implementing the laws regulating the conduct of elections or election campaigns," § 5.05(1)(f); (2) investigate and prosecute civil violations of the laws it administers, § 5.05(1)(c), (2m)(a); (3) issue advisory opinions "regarding the propriety under chs. 5 to 10 or 12 of any matter" for which such an opinion is requested, § 5.05(6a)(a); and (4) "conduct or prescribe requirements for educational programs to inform electors about voting procedures, voting rights, and voting technology," § 5.05(12).  With respect to voter registration, WIS. STAT. § 6.33(1) directs WEC to "prescribe the format, size, and shape of registration forms" and to "design the form to obtain from each elector" certain information listed in the statute.

---

[1] The Wright & Miller treatise discusses the federal corollary to WIS. STAT. § 803.09(1), Federal Rule of Civil Procedure 24(a)(2).  "[I]nterpretation and application of the federal rule provide guidance in interpreting and applying § 803.09(1)." ***Helgeland v. Wisconsin Muns.***, 2008 WI 9, ¶37, 307 Wis. 2d 1, 745 N.W.2d 1.

¶50 To discharge its various responsibilities, WEC must know and understand what Wisconsin's elections statutes require, allow, and prohibit. Though WEC may defend its rules, decisions, and actions when challenged in court, it has a substantial interest in such situations in confirming, clarifying, or otherwise enhancing its understanding of the elections statutes it is charged with administering. Moreover, because WEC is a bipartisan commission headed by commissioners selected by Wisconsin's governor and legislative leaders, *see* WIS. STAT. § 15.61(1)(a), its decision-making with respect to the Form may be impacted by unique political considerations, other organizational priorities, budget constraints, and the individual perspectives of the commissioners.

¶51 Vote.org, on the other hand, has more specific and concrete interests in the Form's continued viability as a means of registering voters in Wisconsin. According to its Chief Executive Officer, Vote.org is "the largest 501(c)(3) nonprofit, nonpartisan voting registration and get-out-the-vote … technology platform in the country." It advocates for, and is actively engaged in, voter registration and turnout efforts nationwide, with a particular focus on registering lower-propensity voters. Persons who wish to register to vote but are unable to complete that process online because, for example, they lack identification showing their current address, may use its web-based registration platform to generate a pre-filled form that they can mail to the appropriate governmental entity to complete their registration. Vote.org has an independent interest in continued use of the Form so that it can efficiently and economically pursue its goals by using the same online platform to assist persons in Wisconsin and other states in registering to vote. As set forth before the circuit court at the time of its intervention ruling, Vote.org would be uniquely and concretely harmed by an adverse decision because it will have to expend resources to change its method for

4

helping Wisconsin residents register to vote. Disallowance of the Form would hinder its voter registration efforts in Wisconsin and its broader goal of increasing registration of lower-propensity voters nationwide.[2] *See **Kane County v. United States***, 928 F.3d 877, 891-92 (10th Cir. 2019) (concluding that conservation nonprofit group had interest in certain rights-of-way that were the subject of a quiet title action given its "decades-long history of advocating for the protection of these federal public lands"). The majority agrees that Vote.org's interests will be impaired and impeded by an adverse decision. Majority, ¶24.

¶52 WEC lacks a similar interest in the continued viability of the Form as a means of increasing voter registration in Wisconsin. As outlined in WEC's summary judgment brief below, the Form was not a WEC creation; it has been approved for use in Wisconsin since at least 2000, more than fifteen years before WEC was created. WEC also does not share Vote.org's objectives—such as registering lower-propensity voters—its unique perspective, or its long-term organizational reliance on, and commitment to, the continued acceptance of the Form. *See **Driftless Area Land Conservancy v. Huebsch***, 969 F.3d 742, 748 (7th Cir. 2020) (explaining that courts must undertake a "contextual analysis" that accounts for both "interests and objectives" of proposed intervenor and representative party beyond common desire for the same litigation outcome). Thus, the harm to WEC if Braun prevailed would bear little resemblance to the harm to Vote.org. WEC would not, for instance, need to devote staff time and

---

[2] As Vote.org's Chief Executive Officer, Andrea Hailey, explained in an affidavit filed with the circuit court, "[i]f WEC was prohibited from using the … Form, … Vote.org would either have to develop software specific to Wisconsin's state voter registration form in order to assist users with pre-populating the Wisconsin-specific form, or it would need to eliminate altogether the option for Wisconsin-based users to download pre-populated voter registration forms."

money to redesign parts of its website. Indeed, because WEC already prepares and distributes the Wisconsin-specific form that Braun insists should be used for registrations, it is far from clear that WEC would suffer any particularized harm at all if Braun prevailed.

  *C.* *WEC's decision not to appeal the summary judgment ruling in Braun's favor makes it clear that the two entities' interests and objectives are not aligned.*

¶53 The divergence between WEC's interest and Vote.org's interest in the Form's continued availability in Wisconsin is made clear by WEC's decision not to appeal the circuit court's summary judgment ruling.[3] That Vote.org would pursue an appeal of the summary judgment ruling, and WEC decided not to, throws into stark relief that their interests are not the same.

¶54 The majority downplays WEC's decision not to appeal, suggesting that if that decision establishes inadequacy, then intervention could be required anytime a nonparty offers to take up an appeal that a losing party declines to pursue "without a showing of anything more." Majority, ¶28 n.11. In reaching this erroneous conclusion, the majority loses sight of the fact that proposed intervenors first need to meet the other three requirements for intervention under WIS. STAT. § 803.09(1). It also disregards the interconnectedness of the statutory requirements. Vote.org's timely request and strong showing of threatened

---

[3] While this appeal was pending, the circuit court ruled on the parties' summary judgment motions, granting Braun's motion and denying WEC's motion. Before issuing its decision, the court granted Vote.org's motion for leave to file a brief as *amicus curiae* supporting WEC's motion. Pursuant to that decision, Vote.org filed its brief in support of WEC's motion. WEC decided not to appeal the circuit court's summary judgment ruling. Vote.org notified us of WEC's decision and informed us that it would have appealed had it been a party in the case. Vote.org also informed us that as a result of the court's grant of summary judgment, it would have to stop offering the Form to Wisconsin registrants.

impairment of its interest lessens the minimal burden to show inadequacy. *See Helgeland*, 307 Wis. 2d 1, ¶39.[4]

¶55    Contrary to the majority's legally unsupported suggestion, as discussed further in Section II, in numerous cases, including many involving a government party, inadequacy is *established* where the party has determined not to appeal, and a proposed intervenor has demonstrated actual impairment of concrete interests; the divergence of interests resulting in the proposed intervenor's inability to protect its interests through an appeal is self-evident. *See, e.g.*, ***Americans United for Separation of Church & State v. City of Grand Rapids***, 922 F.2d 303, 305-06 (6th Cir. 1990) (inadequacy established when the city, the proposed intervenor's "original defender," "abandoned" its role by its failure to appeal, destroying the nonparty's ability to protect its interest); ***United States v. American Tel. & Tel. Co.***, 642 F.2d 1285, 1293-94 (D.C. Cir. 1980) (intervention permitted where "divergence of interests, manifested in the Government's refusal to appeal, [was] evidence of inadequate representation").

¶56    As our supreme court has made clear, the factors must not be considered in isolation:  "[t]he analysis is holistic, flexible, and highly fact-specific[,]" and "[a] court must look at the facts and circumstances of each case 'against the background of the policies underlying the intervention rule.'" *Helgeland*, 307 Wis. 2d 1, ¶40 (footnotes and quoted source omitted).  Here, WEC's decision not to appeal makes clear that it and Vote.org have different

---

[4] Indeed, the circuit court's grant of summary judgment has made the injury to Vote.org's interests concrete because it is no longer able to offer the Form to Wisconsin registrants and is precluded from appealing the circuit court's adverse decision because it was denied leave to intervene.  The adverse ruling, not any voluntary choice on Vote.org's part, impairs and impedes its interest in efficiently and economically assisting lower-propensity voters.

roles, objectives and interests: WEC does not represent Vote.org's interests and it is not an advocate for Vote.org. Their objectives and interests are not aligned.

> D. *Vote.org's and WEC's interests and objectives are not identical.*

¶57     The majority also erroneously finds two presumptions of adequacy applicable against Vote.org, thereby increasing Vote.org's burden of demonstrating inadequate representation from "minimal" to "compelling." Majority, ¶¶29-31. The first is that "adequate representation is ordinarily presumed when a movant and an existing party have the same ultimate objective in the action." *Helgeland*, 307 Wis. 2d 1, ¶90.[5] The majority concludes that this presumption applies here because WEC and Vote.org each sought to defeat Braun's lawsuit and establish "that continued use of the Form to register Wisconsin voters is lawful." Majority, ¶29. But as the Court of Appeals for the Seventh Circuit has recognized, it is not enough that WEC and Vote.org were aligned "in the brute sense that they both want the case dismissed":

> that mode of analysis operates at too high a level of generality…. [A] prospective intervenor must intervene on one side of the "v." or the other and will have the same general goal as the party on that side. If that's all it takes to defeat intervention, then intervention as of right will almost always fail.

*Driftless*, 969 F.3d at 748. What the intervention rule requires, the *Driftless* court explained, is "a more discriminating comparison of the absentee's interests and the interests of the existing parties." *Id.* Courts must undertake a "contextual

---

[5] The United States Supreme Court has described lower federal court application of this presumption as limited to the narrower circumstance "where a movant's interests are *identical* to those of an existing party." *Berger v. North Carolina Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (emphasis added).

analysis" that accounts for both "interests and objectives" beyond the same litigation outcome. *Id.*; *see also Wolff*, 229 Wis. 2d at 748 (that the county and the proposed intervenor sought affirmance of the decision denying a conditional use permit and likely "would offer similar arguments in support of their mutually desired outcome" did not compel the conclusion that the county would adequately represent the intervenor's interest); *Kane County*, 928 F.3d at 894 ("[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation." (citation omitted)).

¶58    In *Driftless*, 969 F.3d at 744, the court concluded that several transmission companies were entitled to intervene in a lawsuit brought by environmental groups against the Wisconsin Public Service Commission to invalidate a permit issued by the commission to the companies to build an electricity transmission line.  Though the transmission companies shared the commission's goal in upholding the permit, the companies were uniquely positioned in that they "own, finance, and will operate the transmission line in question" and had "substantial sunk and anticipated future investments in the power line." *Id.* at 748.  In contrast, the commission owed duties "to the general public, not to the transmission companies," for which it served as regulator, not advocate. *Id.*; *see also Trbovich*, 404 U.S. at 538-39 (holding that Secretary of Labor did not adequately represent a union member even though they shared litigation objective because the Secretary "ha[d] an obligation to protect the 'vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member.'" (quoted source omitted)).

¶59 The present case involves a similar scenario—in addition to its objective of increasing registration among lower-propensity voters with the Form, Vote.org has a unique financial interest in using the Form in Wisconsin to increase voter registration that is not shared by WEC, which exists to manage and regulate voter registration and administer Wisconsin's election statutes. *See Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) ("We do not believe that a federal defendant with a primary interest in the management of a resource has interests identical to those of an entity with economic interests in the use of that resource."). The majority's invocation of the adequacy presumption is limited to a simplistic focus on the entities' shared desired litigation outcome. This approach is at odds with *Trbovich* and its progeny, including *Driftless*; the analysis requires a more discriminating examination of Vote.org's interests and objectives, which are different enough from WEC's such that the presumption does not apply.

### E. WEC is not "charged by law" to represent Vote.org's interests.

¶60 The second presumption the majority erroneously deems applicable applies "when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee." *Helgeland*, 307 Wis. 2d 1, ¶91. In that scenario, "a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity." *Id.* In *Rise, Inc. v. WEC*, No. 2022AP1838, unpublished slip op. ¶36 (WI App July 7, 2023), for example, we relied on the undisputed proposition that WEC and its counsel were "charged by law with the duty of representing the rights of electors," including the proposed intervenors. Here, in contrast, WEC is not "charged by law" with representing Vote.org's interests. As discussed above, WEC is a government entity charged with administering Wisconsin's elections

laws. *See* WIS. STAT. § 5.05(1). That WEC, and the Department of Justice attorneys who represent it, may be obliged to represent the interests of Wisconsin voters is not enough to trigger a presumption that it will adequately represent Vote.org's unique financial interest in the continued viability of the Form in Wisconsin and its broader objective to increase voter participation.[6]

¶61 Because neither presumption of adequacy applies, Vote.org needed only make the minimal showing that WEC's representation "may be" inadequate. It did so and therefore should have been allowed to intervene under WIS. STAT. § 803.09(1).

### II. WEC's Decision Not to Appeal Provides a Basis for Intervention for the Purpose of Appealing the Summary Judgment Ruling.

¶62 Separate and apart from Vote.org's establishment of its right to intervene before the circuit court denied its motion, proceedings in the circuit court while this appeal was pending provide an additional basis for concluding that WEC is not an adequate representative of Vote.org's interest in this litigation. Regardless of whether the divergence of interests was apparent to the circuit court, the conflict between WEC's decision not to appeal and Vote.org's desire to do so creates an independent basis for concluding that WEC is not an adequate representative of Vote.org's interest. Inadequacy is established where the

---

[6] Beyond the fact that WEC is not "charged by law" with representing Vote.org's interests, and that Vote.org has unique interests that are not identical to those of WEC, the interplay between the intervention of right factors also distinguishes this case from ***Rise, Inc. v. WEC***, No. 2022AP1838, unpublished slip op. (WI App July 7, 2023). There, we viewed the second factor—the voter-intervenors' interest in pursuing a vote-dilution theory—as weak and contributing to our conclusion that the intervenors had "complete[ly] fail[ed]" to show that they were not adequately represented by the WEC. *Id.*, ¶29. In the present case, by contrast, Vote.org's strong showing on the first three factors lightens its already minimal burden on the issue of inadequacy—that WEC's representation *may be* inadequate.

purported representative has determined not to appeal and a proposed intervenor has demonstrated actual impairment of a concrete interest. *See, e.g.*, ***Solid Waste Agency of N. Cook Cnty. v. United States Army Corps of Eng'rs***, 101 F.3d 503, 508-09 (7th Cir. 1996); ***Americans United***, 922 F.2d at 306; ***Campaign Legal Ctr. v. FEC***, 334 F.R.D. 1, 1 (D.D.C. 2019) (permitting a third party to intervene to defend an election-related suit where FEC defaulted after failing to garner enough votes to defend the action). Vote.org's injury is no longer potentially threatened; it is concrete. It has been shut out from appellate review of the court's ruling.

¶63 The Court of Appeals for the Sixth Circuit illustrated how a government entity's decision not to appeal an adverse ruling can make it an inadequate representative of an aligned proposed intervenor:

> "[A] decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest." ***Americans United***, 922 F.2d at 306. The Secretary of State has not sought interlocutory review of the preliminary injunction as it relates to two of the three temporarily invalidated provisions, and Michigan's attorney general has not appealed at all. While passively tolerating a preliminary injunction pending a final resolution of the merits may serve the interests of the State of Michigan, it cannot be said to represent the Chamber's interests, in view of its concern with timeliness. The decision not to appeal certain aspects of the district court's preliminary injunction may amount to sound litigation strategy and a prudent allocation of Michigan taxpayers' money, but this decision also further illustrates how the interests of the state and of the Chamber diverge. The State of Michigan has already demonstrated that it will not adequately represent and protect the interests held by the Chamber. Accordingly, the Chamber has made a sufficient showing [of inadequacy] in this regard.

*Michigan State AFL-CIO v. Miller,* 103 F.3d 1240, 1248 (6th Cir. 1997). So too here—regardless of its reasons, WEC's decision not to appeal makes clear its inadequacy as a representative for Vote.org.

¶64 Given the progress of this case in the circuit court during this appeal, however, and the fact that Vote.org was able to present its arguments to that court regarding the substantive merits of Braun's claims, it would make little sense to remand the case for a second consideration of the merits with Vote.org as a party. Thus, I would limit the remand in this case to allow Vote.org an opportunity to appeal the court's summary judgment ruling. *See, e.g.,* **American Tel. & Tel. Co.**, 642 F.2d at 1294 (allowing a party to intervene "only for the limited purpose of taking an appeal" where the party showed sufficient possibility that its interest had not been adequately represented in the federal government's decision not to appeal a discovery order).

### III. The Circuit Court Erroneously Exercised Its Discretion in Denying Permissive Intervention.

¶65 I would also reverse the circuit court's order because it erred in denying permissive intervention under WIS. STAT. § 803.09(2). That provision provides that "[u]pon timely motion anyone may be permitted to intervene in an action when a movant's claim or defense and the main action have a question of law or fact in common." *Id.* Whether to allow permissive intervention is a matter reserved to the court's discretion. *Helgeland*, 307 Wis. 2d 1, ¶120. Thus, the court's decision is not to be disturbed so long as the court provides a "reasoned application of the appropriate legal standard to the relevant facts in the case." *See id.* (citation omitted).

¶66 Even under this deferential standard of review, the circuit court's decision should not stand. First, it is undisputed that Vote.org's motion was timely and that its defense of the Form presents a question of fact or law common to the main action. Thus, Vote.org satisfies the two criteria for permissive intervention. As it notes, courts have exercised their discretion to allow

13

intervention in election law cases where these requirements are met. *See, e.g.*, *Campaign Legal Ctr.*, 334 F.R.D. at 6; *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1307 (N.D. Ga. 2018).[7]

¶67 The circuit court concluded that intervention under WIS. STAT. § 803.09(2) was not appropriate, but its ruling does not survive even deferential scrutiny. At the start of its analysis, the court stated that Vote.org could not intervene simply because it timely filed its motion and showed a common issue of law or fact; it focused on "what the [c]ourt should be doing in exercising my discretion about permissive intervention." But in trying to identify the factors that should inform its exercise of discretion, the court looked to "a lot of the same factors that you consider[] under intervention by right" and concluded that they also weighed against permissive intervention.

¶68 This was legal error, for multiple reasons. First, as the majority concluded, the circuit court's analysis of the intervention of right factors was erroneous in one respect: the court incorrectly determined that Vote.org had not established that its ability to protect its interest would not, as a practical matter, be impaired or impeded by a ruling in Braun's favor. In relying on that faulty analysis when examining permissive intervention, the court incorporated its error into its consideration of permissive intervention.[8]

---

[7] WISCONSIN STAT. § 803.09(2) is based on Federal Rule of Civil Procedure 24(b). We have previously looked to federal case law interpreting Rule 24(b) for guidance in applying § 803.09(2). *See* **Helgeland v. Wisconsin Muns.**, 2006 WI App 216, ¶¶38, 42, 296 Wis. 2d 880, 724 N.W.2d 208, *aff'd*, 2008 WI 9, 307 Wis. 2d 1, 745 N.W.1.

[8] To the extent the circuit court's consideration of the factors governing intervention of right in its analysis of permissive intervention could be read to suggest that a proposed intervenor that fails to establish a basis for intervention as of right is also not entitled to permissive intervention, that suggestion would not be legally sound. The two forms of intervention are

(continued)

¶69 Other reasons given by the circuit court do not support denial of permissive intervention. The court opined that Vote.org's decision to build its voter registration platform on the Form was its own decision and not a basis to allow intervention. As the majority recognizes, this was not an appropriate consideration upon which to deny intervention. Majority, ¶24 & n.10. The court also cited its conclusion that WEC was an adequate representative of Vote.org's interest on the "very narrow and very discrete" issue of whether the Form complied with Wisconsin law. As explained above, however, the court's narrow analysis is not supported in applicable case law and fails to account for the different interests and motivations of WEC and Vote.org.

¶70 Notably, the circuit court also neglected to discuss the third statutory factor upon which WIS. STAT. § 803.09(2) directs the court to base its exercise of discretion—"whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." By itself, the court's failure to address this factor in its ruling renders its exercise of discretion erroneous. *See Buck v. Gordon*, 959 F.3d 219, 224 (6th Cir. 2020) (concluding that district court "made no apparent effort to weigh the benefits of resolving the common question of law presented by the [proposed intervenors] against the risk of undue delay or prejudice to the original parties. This failure constitutes an abuse of discretion.").

¶71 The majority nonetheless maintains that the circuit court's decision can be sustained because the court "heard argument about undue delay during the

governed by distinct factors as set forth in WIS. STAT. § 803.09(1) and (2). A litigant's failure to meet the criteria for one form of intervention does not, by itself, foreclose the other. *See Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 804 (7th Cir. 2019) ("We have … cautioned courts not to deny permissive intervention solely because a proposed intervenor failed to prove an element of intervention as of right.").

course of the motion hearing" and alluded to "the plaintiff's argument" in its decision. Majority, ¶41. In my view, the court's conclusory remarks fall short of what is required when making a discretionary determination.

¶72 Initially, it bears noting that the "argument" about undue delay at the motion hearing consisted of one sentence uttered by Braun's counsel when the circuit court asked why Vote.org had not made a showing sufficient for permissive intervention. In response, Braun's counsel said the following: "So, Your Honor, Vote.org's misreading of the permissive intervention statute, so the factors relating to delay and common question of law and fact and so on, those are necessary to allow permissive intervention, but they're not sufficient." This is, at most, a *reference* to, not an *argument* about, delay. Braun provided no reasoned explanation as to why, given the circumstances in the case, permitting Vote.org would unduly delay the adjudication of his claims. Thus, when the court referred to "the plaintiff's argument" in its oral ruling, it was not referencing or adopting any such reasoning.[9]

¶73 "When a circuit court exercises its discretion, it must explain on the record its reasons for its discretionary decision 'to ensure the soundness of its own decision making and to facilitate judicial review.'" *State v. Scott*, 2018 WI 74, ¶38, 382 Wis. 2d 476, 914 N.W.2d 141 (quoting *Klinger v. Oneida County*, 149 Wis. 2d 838, 847, 440 N.W.2d 348 (1989)). That explanation "must demonstrate that the circuit court examined the relevant facts, applied a proper standard of law, and used a rational process to arrive at a conclusion that a reasonable judge would

---

[9] Braun also did not address the undue delay or prejudice factor in his brief opposing Vote.org's motion to intervene.

make." ***Scott***, 382 Wis. 2d 476, ¶39. Here, the court's reference to "the case law that was filed and the plaintiff's argument" at the conclusion of its remarks fails to convey the reasoned explanation required under our case law as to why the specific facts here supported a conclusion that intervention would unduly delay proceedings or prejudice the litigation of Braun's claims.[10]

¶74 For these reasons, I respectfully dissent.

---

[10] Even if we looked for factual support in the record, there is none. Vote.org filed its intervention motion less than two weeks after the commencement of the case. It sought to intervene to defend the Form against Braun's allegations that it did not comply with Wisconsin law. There is no indication from Vote.org's answer to Braun's complaint, which it filed with its intervention motion, that Vote.org intended to inject any additional claims into the litigation. And the affirmative defenses it raised were largely duplicative of those asserted by WEC.