In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 20-1350

DRIFTLESS AREA LAND CONSERVANCY and
WISCONSIN WILDLIFE FEDERATION,

*Plaintiffs-Appellees*,

*v.*

MICHAEL HUEBSCH, et al.,

*Defendants-Appellees*.

APPEAL OF: AMERICAN TRANSMISSION COMPANY LLC, et al.,

*Intervenors-Defendants-Appellants*.

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 19-cv-1007-wmc — **William M. Conley**, *Judge*.

_____

SUBMITTED JULY 2, 2020 — DECIDED AUGUST 11, 2020

_____

Before SYKES, *Chief Judge*, and FLAUM and ROVNER, *Circuit Judges*.

SYKES, *Chief Judge*. The Wisconsin Public Service Commission issued a permit authorizing the construction of a $500 million electricity transmission line in southwestern

Wisconsin. Two environmental groups sued the Commission to invalidate the permit. The permit holders moved to intervene to protect their interest in the permit; without it the power line cannot be built. The district court denied the motion, and the permit holders appealed.

Briefing was completed at the end of June, and we set the case for oral argument on September 22, 2020. The permit holders moved for expedited review without oral argument; they want an earlier ruling because the case continues without them in the district court. The environmental groups responded in opposition, and the matter is ready for decision.

We grant the motion. The briefs and record adequately address the single issue raised on appeal, and oral argument would not significantly assist the court. *See* FED. R. APP. P. 34(a)(2)(C). The case is submitted on the briefs, and we now reverse the district court. The permit holders are entitled to intervene under Rule 24(a)(2) of the Federal Rules of Civil Procedure. In many respects this is a paradigmatic case for intervention as of right.

## I. Background

The plaintiffs are two Wisconsin environmental groups, Driftless Area Land Conservancy and Wisconsin Wildlife Federation. The defendants are the Wisconsin Public Service Commission of Wisconsin and its three commissioners (collectively, "the Commission"). The Commission regulates public utilities in the state. Two of the proposed intervenors—American Transmission Company LLC and ITC Midwest LLC—are Wisconsin electric-power utilities. The

third, Dairyland Power Cooperative, is a cooperative association that furnishes electricity to its members.

In April 2018 the two utilities and the cooperative filed an application with the Commission for permission to construct a high-voltage transmission line running from Madison through the southwestern part of the state and ending in Dubuque County, Iowa. A project of this type is subject to heavy regulatory oversight and requires a special permit from the Commission known as a "certificate of public convenience and necessity." WIS. STAT. § 196.491(3). The two utilities each own 45.5% of the project; the cooperative owns the remaining 9%. (We refer to the utilities and the cooperative collectively as "the transmission companies.") The estimated cost of the project is $500 million.

The permitting process requires a "class 1" contested case hearing. *Id.* § 227.01(3)(a). An exhaustive administrative proceeding ensued, spanning almost 18 months and drawing more than 50 intervenors. At the end of September 2019, the Commission approved the project and issued a permit authorizing the transmission companies to construct the proposed power line and acquire easements through eminent domain as necessary to complete construction.

In December 2019 Driftless Area Land Conservancy and the Wisconsin Wildlife Federation filed this lawsuit against the Commission seeking to invalidate the permit. Both groups had participated in the permit proceedings as intervenors in opposition, but their views obviously did not carry the day. The complaint raises three constitutional claims under 42 U.S.C. § 1983. The first alleges that the adjudicative process was tainted by the appearance of bias because two of the three commissioners had apparent conflicts of interest,

depriving the plaintiffs and their members of due process. The second and third claims challenge the authorization to use eminent domain as an unlawful taking of private property in violation of the Fifth Amendment's takings clause.

The Commission filed a motion to dismiss in January 2020. A week later the transmission companies moved to intervene, seeking intervention as of right under Rule 24(a)(2), or alternatively, permissive intervention under Rule 24(b). As required by Rule 24(c), they tendered proposed pleadings—answers and a motion to dismiss—with the intervention motion.

The district judge rejected intervention as of right, concluding that the transmission companies and the Commission have the same goal—dismissal of the lawsuit—and the Commission adequately represents that shared objective. The judge also declined to authorize permissive intervention, saying that adding the transmission companies as parties would "almost certainly and needlessly complicate and delay this case." The judge denied the motion without prejudice and invited the transmission companies to renew their request if "a concrete, substantive conflict or actual divergence of interests should emerge" later in the litigation. Alternatively, he invited a "standby" application to intervene—essentially a placeholder motion that could be activated if circumstances changed. *See Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs* (*SWANCC*), 101 F.3d 503, 509 (7th Cir. 1996).

Not content to rely on governmental regulators to protect their $500 million private investment, the transmission companies appealed.

## II. Discussion

## A. Appellate Jurisdiction

We begin by addressing a skirmish over appellate juris-diction.[1] It will not take long. It is well established that "from the perspective of a disappointed prospective intervenor, the denial of a motion to intervene is the end of the case, so an order denying intervention is a final, appealable decision under 28 U.S.C. § 1291." *CE Design, Ltd. v. Cy's Crab House N., Inc.*, 731 F.3d 725, 730 (7th Cir. 2013). Notwithstanding this rule, the plaintiffs moved to dismiss for lack of appellate jurisdiction, arguing that the judge's order is not final be-cause he left open the possibility of a new intervention motion if things change later in the litigation.

The possibility of a new motion if circumstances change does not block an immediate appeal. The contingency that the judge has in mind might never arise, leaving the trans-mission companies on the sidelines of the litigation without appellate review of their intervention claim. Nor does the incantation of the words "without prejudice" automatically defeat finality; what matters is that the judge addressed the substantive merits of the intervention motion and conclu-sively denied it, freezing the transmission companies out of the case. *See United States v. City of Milwaukee*, 144 F.3d 524, 531 n.14 (7th Cir. 1998). Finally, the judge's invitation to file a

---

[1] There is also a minor debate about standing. We do not understand why. The transmission companies hold valuable rights under a government-issued permit authorizing them to build a major power line that will yield a return on their investment for many years to come. The permit—and thus the entire power-line project—is at risk of nullification in this litigation. A favorable decision will prevent that injury. No more is needed for Article III standing.

"standby" motion does not prevent finality. The availability of that optional procedure—an innovation mentioned in *SWANCC* but not specified in any procedural rule—does not foreclose an appeal. Nothing we said in *SWANCC* eliminates a disappointed intervenor's right to immediately appeal an order denying intervention.

The plaintiffs rely on *City of Milwaukee*, but that case actually supports rather than defeats appellate jurisdiction. There the district court denied an intervention motion based on a purely technical error: the intervenor failed to include a proposed pleading with his intervention motion as required by Rule 24(c). *Id.* at 527. The judge denied the motion without prejudice to give the intervenor an opportunity to refile it with the required pleading; the judge did not address the merits of the intervention question. *Id.* at 528–29. We dismissed the appeal, explaining that "a decision denying intervention *on strictly procedural grounds* is not a final judgment when the district court expressly contemplates that the putative intervenor subsequently will file a procedurally correct motion." *Id.* at 530.

This case is not remotely analogous. As we specifically observed in *City of Milwaukee*,

> the circumstances would be different if a district court denied a motion to intervene on the ground that the putative intervenor's interests were adequately protected by the existing parties but entered the denial "without prejudice" in recognition of the fact that the circumstances of the case may change such that intervention at a later date would be appropriate.

*Id*. at 531 n.14. That describes this case.

The judge's order is final and appealable under § 1291. *CE Design*, 731 F.3d at 730. Appellate jurisdiction is secure.

## B. Intervention as of Right

With the jurisdictional hurdle cleared, we move to the intervention question. The rule governing intervention as of right provides:

> (a) Intervention of Right. On timely motion, the court *must permit anyone to intervene who*:
>
> …
>
> (2) claims an interest relating to the property or transaction that is the subject of the action[] and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2) (emphasis added).

The rule is straightforward: the court *must* permit intervention if (1) the motion is timely; (2) the moving party has an interest relating to the property or transaction at issue in the litigation; and (3) that interest may, as a practical matter, be impaired or impeded by disposition of the case. A proposed intervenor who satisfies these three elements is *entitled* to intervene *unless* existing parties adequately represent his interests.

Everyone agrees that the three basic criteria for intervention are satisfied: the intervention motion was timely; the transmission companies hold a valuable property interest in

the permit that is under attack in this litigation; and their interest will be *extinguished* (not just "impaired" or "impeded") if the plaintiffs prevail. The only disputed question is whether the existing defendants—the Commission and its members—adequately represent their interests. The district court answered "yes" and denied intervention as of right. We review that determination de novo. *Wis. Educ. Ass'n Council v. Walker* (*WEAC*), 705 F.3d 640, 658 (7th Cir. 2013).

"The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties." 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1909 (3d ed. 2007). Our recent decision in *Planned Parenthood of Wisconsin, Inc. v. Kaul* describes our circuit's three-tiered methodology for evaluating adequacy of representation under Rule 24(a)(2). 942 F.3d 793, 799 (7th Cir. 2019). "The default rule," we explained, "is a liberal one." *Id*. It derives from the Supreme Court's decision in *Trbovich v. United Mine Workers of America*, which explained that "the requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." 404 U.S. 528, 538 n.10 (1972).

However, if the interest of the absentee is identical to that of an existing party, or if a governmental party is charged by law with representing the absentee's interest, then the standard for measuring adequacy of representation changes. In both situations—where the absentee and an existing party have identical interests, or the existing party is a governmental agency or official with a legal duty to represent the absentee's interest—a rebuttable presumption of adequate

representation arises, and the prospective intervenor must carry a heightened burden to establish inadequacy of representation. The degree of this heightened burden varies.

In *Planned Parenthood* we explained the presumption in this way:

> Where the prospective intervenor and the named party have the same goal, … there is a rebuttable presumption of adequate representation that requires a showing of some conflict to warrant intervention. This presumption of adequacy becomes even stronger when the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors; in such a situation the representative party is presumed to be an adequate representative unless there is a showing of gross negligence or bad faith.

942 F.3d at 799 (quotation marks and citation omitted).

In the district court, the plaintiffs advocated for the highest standard, which applies when a governmental party is legally required to represent the absentee's interests. This standard sets a nearly insurmountable bar: the absentee must show that the existing representation is grossly negligent or in bad faith. The judge declined to go that far; he was not convinced that the Commission is charged by law with protecting the transmission companies' interests. Still, he applied the presumption of adequacy in its weaker form. He first concluded that the transmission companies and the Commission share the same goal: dismissal of the plaintiffs' suit. Extrapolating from that conclusion, the judge applied

the presumption of adequacy and required the transmission companies to satisfy the intermediate burden to overcome it. That is, he required them to show an actual, concrete conflict with the Commission's representation and determined that they had not done so.

The transmission companies challenge the judge's use of the intermediate standard. They argue instead for the lenient default standard, which involves no thumb on the scale and requires only a minimal showing that the existing party's representation "may be" inadequate. Alternatively, they argue that the judge misapplied the intermediate standard. The plaintiffs, for their part, no longer advocate for the gross-negligence/bad-faith standard. They adopt a more moderate stance and simply defend the judge's application of the intermediate standard.

Under a correct reading of Rule 24(a)(2) as glossed by our three-tiered approach, the transmission companies are entitled to intervene. The rule calls for a contextual, case-specific analysis, and resolving questions about the adequacy of existing representation requires a discerning comparison of interests. That did not occur here.

To trigger the presumption of adequacy under the intermediate standard, it's not enough that a defense-side intervenor "shares the same goal" as the defendant in the brute sense that they both want the case dismissed. The judge seemed to think it was, but that mode of analysis operates at too high a level of generality. Needless to say, a prospective intervenor must intervene on one side of the "v." or the other and will have the same general goal as the party on that side. If that's all it takes to defeat intervention, then intervention as of right will almost always fail. The judge's

analysis essentially boils down to this: The Commission wants the case dismissed. The transmission companies do too. Therefore, they share the same goal, and the presumption of adequate representation applies. If that's truly how the presumption works, then the default standard will rarely apply.

That's not how the presumption works. Rule 24(a)(2) requires a more discriminating comparison of the absentee's interests and the interests of existing parties. When that kind of contextual analysis is done here, it quickly becomes clear that the transmission companies are entitled to participate as parties to this litigation to protect their private investment in this massive energy project. Their interests are independent of and different from the Commission's in several important respects. To name a few: They own, finance, and will operate the transmission line in question, and have obligations to their investors in connection with its construction and operation. They have substantial sunk and anticipated future investments in the power line, and a valid expectation of a return on their investment pursuant to the ratemaking regulatory regime administered by the Federal Energy Regulatory Commission. *See* 16 U.S.C. §§ 824(d), 824d(a), 824e(a). As public utilities, they have a legal obligation to maintain the power grid and provide adequate and reliable electricity services to the public. *See* WIS. STAT. § 196.03. (The cooperative's obligation to furnish electricity flows to its members, not the general public.) And they hold the right to use eminent domain as needed to construct the power line.

The Commission's interests and objectives overlap in certain respects but are importantly different. The Commission is a regulatory body, and its obligations are to the general

public, not to the transmission companies or their investors. The Commission can be expected to defend the procedural regularity of its proceedings, which is the focus of the due-process challenge raised in count one. The other two counts, however, attack the use of eminent domain, and that authority belongs to the transmission companies.

More broadly, the Commission *regulates* the transmission companies, it does not *advocate for* them or represent their interests. The transmission companies cannot be forced to rely entirely on *their regulators* to protect their investment in this enormous project, which they stand to lose if the plaintiffs are successful. For these reasons, their intervention request is not controlled by the line of cases involving intervention motions by individual members of the public, citizen groups, or other units of government that hold identical or closely aligned interests and objectives as existing governmental parties. *See, e.g.*, *Planned Parenthood*, 942 F.3d at 810 (Sykes, J., concurring); *WEAC*, 705 F.3d at 658–59; *SWANCC*, 101 F.3d at 508.

Instead, this case falls within a line of cases involving permit holders that have successfully invoked Rule 24(a)(2) to intervene in litigation challenging their permits. *See, e.g.*, *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517–18 (7th Cir. 2004); *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 568–69 (5th Cir. 2016); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996–97 (10th Cir. 2009); *Sierra Club v. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993). The plaintiffs cite no appellate case, and we know of none, that affirmed a denial of intervention in similar circumstances.

Because the transmission companies' interests and objectives are materially different than the Commission's, the

presumption of adequate representation does not apply. Under the lenient default standard, they need only show that the Commission's representation "may be" inadequate, "and the burden of making that showing should be treated as minimal." *Trbovich*, 404 U.S. at 538 n.10. They have satisfied this burden.

As we've noted, the Commission can be expected to mount a vigorous defense against the plaintiffs' attack on the integrity of the permitting process and the impartiality of the commissioners. But the power-line project itself, and the permit necessary to construct it, belong to the transmission companies, as does the authority to use eminent domain, which is the subject of counts two and three. The Commission may be content to move slowly in this litigation; but the transmission companies want to move quickly, begin using eminent domain as soon as possible, and otherwise keep the construction project on schedule. Different defenses have been raised. In their proposed motion to dismiss submitted with the intervention motion, the transmission companies argue that even if two commissioners had conflicts, the permit was lawfully issued on the vote of the remaining commissioner or would have issued as a matter of law regardless. The Commission raised neither of these arguments in its motion to dismiss. These are not mere "quibbles with … litigation strategy." *WEAC*, 705 F.3d at 659. Rather, they reflect very real differences in the interests at stake.

Accordingly, the transmission companies cannot be kept out of this case. The basic prerequisites for intervention under Rule 24(a)(2) are unquestionably satisfied, and the transmission companies have carried their burden to show that the Commission's representation may be inadequate to

protect their interests. We therefore reverse the district court's order and remand with instructions to permit the transmission companies to intervene.

REVERSED AND REMANDED

WITH INSTRUCTIONS.