RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0308p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ESTATE OF DONOVAN L. LEWIS, by and through its
Administrator, Rebecca Duran,

*Plaintiff-Appellee*,

*v.*

CITY OF COLUMBUS, OHIO, et al.,

*Defendants*,

FRATERNAL ORDER OF POLICE, CAPITAL CITY LODGE
#9,

*Intervenor-Appellant.*

No. 24-3846

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:24-cv-01841—Michael H. Watson, District Judge.

Argued: March 20, 2025

Decided and Filed: November 7, 2025

Before: STRANCH, THAPAR, and DAVIS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Lathan J. Lipperman, HARSHMAN, WANNEMACHER, TIPTON & LIPPERMAN, Columbus, Ohio, for Appellant. Barton R. Keyes, COOPER & ELLIOTT, Columbus, Ohio, for Appellee. **ON BRIEF:** Lathan J. Lipperman, HARSHMAN, WANNEMACHER, TIPTON & LIPPERMAN, Columbus, Ohio, for Appellant. Barton R. Keyes, Rex H. Elliott, C. Benjamin Cooper, Kaela J. King, COOPER & ELLIOTT, Columbus, Ohio, for Appellee.

---

**OPINION**

---

DAVIS, Circuit Judge.   The Fraternal Order of Police, Capitol City Lodge #9 appeals the district court's denial of its motion to intervene as of right and permissively in this civil rights action brought by the Estate of Donovan Lewis against the City of Columbus and its police chief. The complaint alleges that the city's police department maintains a policy or custom of using excessive force against Black people and that this policy or custom resulted in Lewis's death. The underlying § 1983 claim is not before us.   Rather, in this appeal, we are tasked with determining whether the district court erred in denying FOP's motion to intervene in the lawsuit either as of right or permissively.   Because FOP has satisfied the requirements to intervene as of right, we REVERSE the district court's denial of intervention.

**I.**

*A.   Factual Background*

Twenty-year-old Donovan Lewis was at home in bed, around 2 a.m., when police officers entered his apartment to arrest him on outstanding warrants.  Once inside the residence, Officer Ricky Anderson fatally shot the unarmed Lewis in the abdomen as he sat up in bed.  Pursuant to 42 U.S.C. § 1983, Lewis's estate ("the Estate") brought an action against the City of Columbus (the "City") and the Columbus Division of Police ("CPD") Chief, in her official capacity (together, "Defendants").   The Estate alleges that Anderson used excessive—indeed deadly— force against Lewis as a result of an official policy or custom of racially discriminatory policing and excessive force maintained by Defendants.   The Estate seeks damages and permanent injunctive relief, along with other forms of relief.

Relevant here, the complaint attacks several policies that implicate provisions of the City's collective bargaining agreement ("CBA") with the Fraternal Order of Police, Capitol City Lodge #9 ("FOP").  The Estate asserts that these provisions undergird the City's official policy or custom of racially discriminatory policing and excessive force that led to Lewis's death.  For

instance, the complaint avers that the City's inadequate disciplinary policies and unspoken commitment not to terminate officers enables the complained of police practices. As a remedy, the complaint suggests specific "reforms identified in the attached Exhibit A." (Compl., R. 1, PageID 36). The list of eleven proposed reforms in Exhibit A includes measures such as creating a new disciplinary system that would assign points for sustained complaints against officers and reduce officers' street-level duties commensurately; creating an internal whistleblower hotline; requiring officers who retire in bad standing or during an ongoing investigation to relinquish their pension and benefits; and allowing family members to visit victims of officer-involved shootings in the hospital.

FOP negotiated the CBA out of which the various policies criticized in the complaint arose. Pursuant to Ohio Revised Code §§ 4117.04 and 4117.05, FOP is the "exclusive representative" of around 1,800 sworn CPD members, according to its estimates. It is legally obligated to represent them in all mandatory subjects of bargaining in Ohio, including wages, hours, and terms and conditions of employment. *See* OHIO REV. CODE § 4117.08. Those terms and conditions, in the context of FOP's CBA, include assignments, promotions, administrative investigations, grievances, discipline, and terminations. (R. 11-1, PageID 154–56). The current CBA with the City expires on December 8, 2026. And the CBA in effect at the time of Lewis's death expired on December 8, 2023.

### B. Procedural History

One month after the Estate filed suit, FOP moved to intervene as of right under Federal Rule of Civil Procedure 24(a) or permissively under Rule 24(b). *See* Fed. R. Civ. P. 24. FOP asserted that some of the Estate's proposed reforms would violate the terms of its CBA with the City. Specifically, FOP alleged that the requested reforms would do the following:

> preclude enforcement, in whole or in part, of the past practices clause (Section 2.7 [of the CBA]); alter assignments and transfers (Article 11); change how discipline is imposed and the duration of that discipline (Article 10); modify how investigations are conducted (Article 8); cause officers to violate Division Directives (Section 14.1); and limit or eliminate the FOP's ability to address safety concerns (Section 19.1).

(Mot. to Intervene, R. 11, PageID 144). FOP argued it had both a contractual right and a legal obligation, as the "exclusive collective bargaining representative of all sworn members of CPD below the rank of deputy chief," to challenge the proposed reforms in court. (*Id.* at PageID 139).

The Estate did not wholly object to intervention, although it posited that "grounds would exist" to do so; it instead asked the district court to limit FOP's intervention to "potential injunctive remedies, and not allow it to participate in the liability or damages parts of this case." (Resp., R. 17, PageID 368). Apparently taking no position on the issue, the City filed no response to FOP's motion to intervene. The district court denied without prejudice FOP's motion to intervene as of right or permissively. The district court opined that FOP maintains a limited interest in a potential remedial phase but concluded that it lacks a substantial legal interest in the liability phase. The court also alternatively concluded that the City can adequately represent any liability-phase interest FOP may have and invited FOP to refile its motion if the Estate prevails on the merits or if the parties explore an extra-judicial resolution. Beyond that, the district court urged the parties to include FOP in any settlement discussions. FOP timely appealed.

## II.

As an initial matter, the parties disagree about whether we have jurisdiction over this appeal. FOP says we have jurisdiction either under 28 U.S.C. § 1291 or, alternatively, under the collateral-order doctrine. The Estate argues that we lack jurisdiction because the district court's order was neither a final decision under § 1291 nor one satisfying the narrow requirements of the collateral-order doctrine. We have jurisdiction under the collateral-order doctrine.

### A.   *Final Decision under 28 U.S.C. § 1291*

Our appellate jurisdiction is generally limited to district courts' "final decisions." 28 U.S.C. § 1291. The Supreme Court has explained that a "final decision" is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Hall v. Hall*, 584 U.S. 59, 64 (2018) (quotation marks and citation omitted). And "for the most part, a district court's decision counts as 'final' only if it takes care of all claims and all parties in the

case." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 273 (6th Cir. 2019) (citation modified).

Citing *Stringfellow v. Concerned Neighbors in Action*, FOP argues that we have jurisdiction under § 1291 because "an order [that] prevents a putative intervenor from becoming a party in *any* respect . . . is subject to immediate review." 480 U.S. 370, 377 (1987). (Appellant Br., ECF 13, 1). But FOP's reliance on this passage from *Stringfellow* is too broad. To start, an interlocutory appeal is inherently an appeal from a non-final order. *See Black v. Dixie Consumer Prods. LLC*, 835 F.3d 579, 582 (6th Cir. 2016) ("[We] review non-final orders on an interlocutory basis."). And the *Stringfellow* Court recognized that deciding the proposed intervenor's status there was not a determination that would end the litigation on the merits and leave only the execution of judgment for the district court to do. 480 U.S. at 374–75. So it decided appellate jurisdiction within the confines of the collateral-order doctrine, not under § 1291. *Id.* at 375.

Likewise, here, the decision to deny FOP intervenor status did not leave the district court with only the execution of judgment to be completed. So FOP's appeal does not fit the ordinary category of cases for which § 1291 grants us jurisdiction.

### B. Collateral-Order Doctrine

That said, the district court's order satisfies all three elements of the collateral-order doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949), so we have jurisdiction to consider FOP's appeal. "The collateral-order doctrine permits interlocutory appeals of orders that (1) are conclusive on the questions they decide, (2) resolve important questions separate from the merits, and (3) are effectively unreviewable if not addressed through an interlocutory appeal." *Fox v. Saginaw Cnty.*, 35 F.4th 1042, 1046 (6th Cir. 2022) (internal quotation marks and citation omitted).

We have observed that "an order completely denying intervention is immediately reviewable by way of an interlocutory appeal." *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989) (citing *Stringfellow*, 480 U.S. at 377–78); *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 576 (6th Cir. 2018). Here, FOP asserts that the district court's order worked as

such a complete denial permitting an interlocutory appeal, despite its express invitation for FOP to renew its motion should the case progress to equitable remedies. We agree.

In *Stringfellow*, the movant sought to intervene as of right. The Supreme Court "suggested that orders denying intervention in any respect fall within the potential reach of the *Cohen* [collateral-order] doctrine." *Purnell v. Akron*, 925 F.2d 941, 944 (6th Cir. 1991) (citing *Stringfellow*, 480 U.S. at 370). Yet this suggestion did not benefit the proposed intervenor in *Stringfellow* because it already had been allowed permissive intervention. The grant of permissive intervention in *Stringfellow* meant that the proposed intervenor could not satisfy the reviewability prong of the collateral-order doctrine. This was because the proposed intervenor already was "a participant in the proceeding and ha[d] alternative means for challenging the order," *Stringfellow*, 480 U.S. at 378, such as the ability to seek "review of its claims on appeal from the final judgment," *id.* at 375. Nonetheless, the Court reiterated that orders restricting proposed intervenors "from becoming a party in *any* respect" are immediately reviewable. *Id.* at 377 (emphasis in original).

Heeding *Stringfellow*'s guidance, we recognized our jurisdiction in *Purnell* because the district court's order in that case denied intervention "in all respects" and otherwise met "all elements of the *Cohen* test." *Purnell*, 925 F.2d at 945. And in *Sales*, we exercised jurisdiction where the district court's order "both denied intervention and finally determined" the claim the intervenor wished to raise—recovery of costs. 873 F.2d at 120.

The same is true here; the district court's order denies FOP intervention in all respects. The order (1) is conclusive on the question of both types of intervention—finding FOP could not intervene as of right and denying permissive intervention; (2) resolves an important question separate from the merits because it addresses whether FOP has a right to defend its interests in this suit, which is separate from the merits of the claims related to Lewis's death; and (3) is effectively unreviewable if not addressed through an interlocutory appeal. *See Fox*, 35 F.4th at 1046. Regarding the final factor—reviewability—it is true that the district court bifurcated the case, denied FOP intervention without prejudice, and invited FOP to refile its motion later if the case progresses to the remedial phase. But these facts do not affect reviewability here because

that invitation does not assure future participation. An order denying FOP's motion in part and granting it in part—allowing FOP to intervene in any remedial phase—would have provided such an assurance. *See, e.g.*, *United States v. City of Detroit*, 712 F.3d 925, 927, 931–33 (6th Cir. 2013) (recognizing that district courts may allow limited intervention "to participate in future remedial proceedings"). But it did not take that route. Instead, the district court indicated it would "entertain a renewed motion to intervene in the event Plaintiff prevails on liability or the Parties engage in settlement negotiations" and "not impose injunctive relief without permitting FOP the opportunity to renew its motion to intervene." (Op., R. 19, PageID 395–97). This overture from the district court amounted to no more than a non-binding offer to entertain another motion. Therefore, it did not establish reviewability.

On this point, we agree with our sister circuit that the mere "possibility of a new motion if circumstances change does not block an immediate appeal." *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 745 (7th Cir. 2020). After all, "[t]he contingency that the judge has in mind might never arise, leaving [the proposed intervenor] on the sidelines of the litigation without appellate review of [its] intervention claim." *Id.* And the mere "incantation of the words 'without prejudice' [does not] automatically defeat finality; what matters is that the judge addressed the substantive merits of the intervention motion and conclusively denied it, freezing [the proposed intervenor] out of the case." *Id.*

That is what happened here. The district court reached the merits of FOP's motion, concluding that FOP lacked a substantial legal interest in the liability phase and that any interest it had was adequately protected by the City. With FOP officially excluded and working from the outside of the litigation, the district court's order is effectively unreviewable if not addressed via interlocutory appeal. It therefore meets all three elements of *Cohen* and is an appealable collateral order.

### III.

#### A. *Standard of Review*

"Except as to issues of timeliness, . . . [our] review of a district court's denial of a motion to intervene under Rule 24(a) . . . is *de novo*." *Wineries of the Old Mission Peninsula Ass'n v.*

*Twp. of Peninsula*, 41 F.4th 767, 771 (6th Cir. 2022) (citation omitted). Timeliness is not at issue here, so we accord no deference to the determination made below.

### B. Intervention as of Right—Federal Rule of Civil Procedure 24(a)(2)

Federal Rule of Civil Procedure 24 governs a non-party's right to intervene in an action. It provides that a court "must" allow intervention for anyone who makes a timely motion to do so, "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Thus, under the rule, FOP must establish four elements to intervene as of right: (1) timeliness; (2) a substantial legal interest in the subject matter of the case; (3) an impaired ability to protect that interest absent intervention; and (4) inadequate protection of its interest by current litigants. *See Grainger v. Ottawa Cnty.*, 90 F.4th 507, 513 (6th Cir. 2024).

Under binding precedent, we must construe the right to intervene broadly in FOP's favor. *See Purnell*, 925 F.2d at 950. And this generally favorable construction transforms into a mandatory allowance of intervention where, as here, FOP has established each of the elements set forth in Rule 24(a). *See Grainger*, 90 F.4th at 513.

#### 1.       Substantial Legal Interest

*Forfeiture.* As an initial matter, the Estate says FOP failed to preserve any argument that it has an interest in the liability phase because it raised the argument for the first time in its reply brief below. FOP counters that language in its original motion to intervene properly preserved the issue. (*See* Appellant Reply Br., ECF 15, 10 (quoting Mot. to Intervene, R. 11, PageID 138)). We need not resolve the issue. For regardless of whether FOP sufficiently preserved the issue, the district court considered the question of FOP's interest in the liability phase on the merits and denied intervention. So FOP may now challenge the district court's order. *See United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) ("When a district court resolves an issue, the losing party can challenge it."). We thus turn to the merits.

FOP argues that it has a substantial legal interest in the liability phase of the case, not just a potential remedial phase. It contends that the CPD policies identified as contributors to Lewis's alleged deprivation of constitutional rights and death stem directly from the CBA. And those policies are the very terms that FOP has fought to protect. FOP also asserts that the relief the Estate seeks would fundamentally alter or eliminate bedrock provisions of the CBA and harm FOP's members. According to FOP, the district court's denial of intervention prevents it, as the sole bargaining representative of approximately 1,800 sworn CPD members, from fulfilling its statutory duties. Those duties include protecting its members in all mandatory subjects of bargaining under Ohio law, which encompass wages, hours, and terms and conditions of employment—subjects that the contested policies directly affect. The City, as the public employer, is mandated by law to negotiate with FOP over these provisions. And, according to FOP, the lawsuit threatens its members' contractual benefits and their on-the-job safety. So, in FOP's view, all these reasons give it a substantial legal interest in defending those policies at the liability stage of this case.

We have "opted for a rather expansive notion of the interest sufficient to invoke intervention of right," but "this does not mean that any articulated interest will do." *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007) (citation modified). Proposed intervenors' interest in the litigation they seek to join must be both "direct and substantial." *Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989). That said, the substantial-legal-interest requirement is a lower threshold than the injury-in-fact requirement of Article III standing. *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 307 (6th Cir. 2019). FOP can meet this threshold by showing that it is a "real party in interest in the transaction" at issue in the proceeding. *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 317 (6th Cir. 2005) (citation modified). And it must have a "significantly protectable interest," which is not the case when the intervenor may "assert that interest or that claim in due course at its proper place in any subsequent trial." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Making this determination "is necessarily fact-specific." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

An organization can establish a substantial legal interest by showing the impact of a lawsuit on its members, when that impact is concrete and represents more than "a general ideological interest." *Wineries*, 41 F.4th at 773 (citation omitted). In *Wineries*, for example, a local watchdog organization focused on municipal ordinances successfully demonstrated a substantial legal interest in a zoning-ordinances dispute between a township seeking to regulate land use and an association of wineries. The watchdog organization's interests were based on the potential impact of any proposed relief on the property rights of its members (local property owners). The members' property interests, we recognized, "are the most elementary type of right that Rule 24(a) is designed to protect." *Id.* at 772 (quoting *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 869 (8th Cir. 1977)).

An organization's involvement in promulgating and maintaining provisions that are challenged in a lawsuit can also, under some circumstances, lead to a substantial legal interest. For instance, in *Miller*, we held that a state chamber of commerce ("Chamber"), whose membership comprised thousands of Michigan corporations, had a substantial interest in the case because, among other things, the Chamber had been "a vital participant" in the process leading to the adoption of legislation that the plaintiff union sought to enjoin. 103 F.3d at 1246–47. Additionally, the Chamber itself was regulated by several provisions in the legislation. Though the case featured an admittedly "unique" set of facts, grappling as it was with an interest in "the validity of legislation" and "the exercise of political power," it provides useful guidance on the types of interests that can give rise to mandatory intervention. *Id.* at 1245–47.

Like the Chamber in *Miller*, FOP was a vital participant in the process that produced the policies the Estate now challenges and seeks to permanently enjoin, and its members will be regulated by those policies and any changes to them. Moreover, here too, the Estate identifies FOP's "perceived political power" as a boon to the City's "unwritten rule or custom" of not pursuing criminal charges against police officers—a circumstance that purportedly feeds police noncompliance with use-of-force training and supports the Estate's claim for liability. (Compl., R. 1, PageID 29).

We are not the first to consider questions of police-union intervention where claims in a lawsuit center on a municipality's allegedly unconstitutional policy or custom. Two of our sister circuits—the Second and the Ninth—have allowed intervention by police unions when those suits threatened union interests. First, in *Payne v. City of New York*, the Second Circuit found that "[t]he merits question before the district court is whether certain NYPD policies are permissible. The answer to that question may require a change in those policies. . . . That means the litigation—at the merits phase—may impair the [police union's] interest." 27 F.4th 792, 800 (2d Cir. 2022). Second, in *United States v. City of Los Angeles*, the Ninth Circuit granted intervention to a police union, finding that it had a protectable interest in the merits phase of the litigation "because the complaint seeks injunctive relief against its member officers and raises factual allegations that its member officers committed unconstitutional acts in the line of duty." 288 F.3d 391, 399 (9th Cir. 2002). We do not, as the district court did, find these cases wholly inapposite. Like the union in *Payne*, FOP identifies officer safety as one of the interests it seeks to protect as it relates to the policies at issue in this litigation. *See* 27 F.4th at 799. And like the unions in *City of Los Angeles* and *Payne*, FOP is also faced with allegations concerning how members other than Anderson allegedly relied on challenged policies to violate constitutional rights. *See City of Los Angeles*, 288 F.3d at 396, 399; *Payne*, 27 F.4th at 796–97. These interests go beyond an interest in equitable remedies.

Turning to FOP's arguments, it insists that the requested policy reforms will have a concrete impact on union obligations and on its members' financial and safety interests. To this end, FOP has specified the CBA provisions allegedly implicated by the Estate's allegations and requested reforms. These provisions include the 90-day time limit for misconduct investigations; progressive officer discipline, including the just-cause requirement for terminations; indemnification for legal proceedings; officer safety measures; pension and retirement benefits; and the past practices provision. And FOP explains, at length, the effect that excising or weakening these policies would have on its members. By its reading, the complaint explicitly challenges several of these policies and implicitly challenges others. For example, the complaint broadly alleges that "[t]he combination of a toothless disciplinary policy, indemnification from civil liability, and practical immunity from criminal prosecution creates a perfect storm in which

Columbus Police officers know that there will nearly always be no repercussions to them for violent acts." (Compl., R. 1, PageID 30). FOP argues it has an interest in defending each of these provisions at the liability phase to establish that the provisions played no role in Anderson's use of force on Mr. Lewis or uses of force by anyone else identified in the complaint. (Appellant Br., ECF 13, 24).

As FOP observes, the complaint does not end with Anderson's actions. Beyond allegations of Anderson's use of excessive force against Lewis, the complaint recounts allegedly unconstitutional uses of force by other FOP-member officers, like Officer Zachary Rosen, who the Estate says "was caught on videotape stomping on the head of a handcuffed and helpless Black suspect." (Compl, R. 1, PageID 30). The complaint alleges that FOP was "[i]nfuriated" by Rosen's subsequent termination and responded by unanimously approving a no-confidence vote against the mayor, the public safety director, and the city council president. (*Id.* at PageID 31). And now, rather than passively awaiting the outcome of the current parties' litigation strategies, FOP wants the chance to employ its own strategies to protect the measures it successfully obtained for its members and to defend against the allegations that it (or its members) contributed to racially discriminatory policies, customs, or practices.

Given the complaint's framing, these policies seem certain to arise during the liability phase as it relates to the *Monell* claim against the City. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). For instance, whether the 90-day time limit on investigations incentivized Anderson to act with reckless disregard for human life in his use of force against Lewis is directly at issue based on the complaint's allegations. The Estate decries the just-cause disciplinary policy as "toothless" and says that the disciplinary policy overall led to the failure "to properly discipline Anderson . . . to ensure that he did not continue engaging in misconduct," one of the theories it raises for *Monell* liability. (Compl., R. 1, 30, 33). FOP says it "fought extensively" to protect the 90-day time limit on investigations, which the City has repeatedly tried to remove so that investigations last indefinitely. (Appellant Br., ECF 13, 21). And any factual or legal findings on the policy will directly shape what, if any, equitable remedies will be available. Similarly, the investigation process likely will come up at trial, considering that according to the Estate, Anderson had at least fifty-eight internal investigations

into his conduct between 2001 and 2020, forty-eight of which were "Use of Force/Chain of Command Investigations" and ten of which resulted in documented violations. (Compl., R. 1, PageID 32).

The just-cause requirement (specifying that no FOP member will receive corrective or disciplinary action "except for just cause") is also implicated in the Estate's allegations. (Collective Bargaining Agreement, R. 11-1, PageID 181, Art. 10.1). FOP negotiated these and other provisions of the disciplinary process and maintains an interest in keeping them intact as a safety measure for its members. And FOP also has a substantial legal interest in the liability phase because any merits findings will unavoidably affect the potential remedies available. (*See* Compl., R. 1, PageID 36). *See Payne*, 27 F.4th at 802–03 ("Likewise, the nature and scope of any injunctive relief would likely be influenced by the circumstances shown in discovery and the resolution of issues that may predate the remedy phase.").

In this respect, our approach broadly aligns with district court decisions in this circuit, which have repeatedly allowed FOP to intervene when the litigation directly implicated the ongoing vitality of provisions that came about as a result of the union's critical efforts in the collective bargaining process and the rights of its members. *See Alsaada v. City of Columbus*, No. 2:20-cv-3431, 2021 WL 1720999, at *3 (S.D. Ohio Apr. 30, 2021) (allowing FOP to intervene because its interest was "substantial" where "the requested relief . . . will potentially have a substantial impact on the terms of the CBA and the collective bargaining rights of the FOP and its members"); *see also Shreve v. Franklin Cnty., Ohio*, No. 2:10-cv-644, 2011 WL 250407, at *5 (S.D. Ohio Jan. 25, 2011) ("[T]he FOP's legal interests could be impacted by this action" because "the FOP could prevent interference with the terms of the CBA and the collective bargaining rights of the FOP and its members."); *United States v. City of Columbus, Ohio*, No. 2:99-cv-1097, at 5 (S.D. Ohio Feb. 7, 2000) ("To the extent that [the CBA] confers rights and expectations upon the FOP and its members, those rights and expectations are placed directly at issue by the allegations of the complaint.") (*United States v. City of Columbus* Opinion, R. 11-4, PageID 343). And the Estate's efforts to distinguish these cases from the circumstances here fall short. At bottom, the factual allegations and legal claims for relief support FOP's plea to intervene.

Like the unions in *Payne* and *City of Los Angeles*, FOP has an interest in the liability phase to the extent that it will impact the CBA and affect the rights of its members. This includes protecting the contractually negotiated rights of officers involved in shootings. Any determination of the City's *Monell* liability here will necessarily consider whether a custom or policy led to the alleged use of excessive force against Lewis. And as a practical matter, CPD's policies largely flow from the "authority, parameters, and limitations in the CBA." (Appellant Br., ECF 13, 6). As discussed, both the discipline and termination provisions are under scrutiny in the liability phase. FOP has a substantial legal interest, grounded in its statutory role as the exclusive representative of its approximately 1,800 member-officers, in defending these policies on the merits. Moreover, its interest in protecting officer safety—a factor it contends is implicated by the Estate's proposed reform to permit early family-member visits to shooting victims—is cognizable apart from the CBA. *See Payne*, 27 F.4th at 801–02. FOP's ability to intervene to defend these policies will directly impact not only member-officers' daily lives but also the negotiations between FOP and the City for a new CBA. What's more, any findings on the policies during the liability phase will affect the remedial phase and whether the court adopts the eleven contested reforms. As it stands, FOP will have no opportunity to participate in the proceedings and defend its interests or those of its member-officers.

Thus, FOP has demonstrated a substantial legal interest in the subject matter of the case.

### 2. *Impairment Absent Intervention*

Next, FOP argues that its interests will be impaired absent intervention. The district court did not reach this element but opined that if FOP had a substantial legal interest in the merits of the case, "that interest would possibly be impaired absent intervention." (Op., R. 19, PageID 396). We agree.

"To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied," and "this burden is minimal." *Wineries*, 41 F.4th at 774 (citation modified). FOP can do so by showing that the case's disposition would put it "at a practical disadvantage in protecting its interest." *Id.* (citation omitted). FOP has met this minimal burden.

As things stand, perhaps FOP will refile its motion and the district court will grant intervention at the remedial phase. But, by then, FOP will have missed the liability phase. And it would then face the practical disadvantage of losing its chance to develop facts and legal defenses that might have protected the challenged policies. It points out that the City was its adversary in obtaining some of the provisions that are at issue, so the City is unlikely to robustly fight to retain those with which it has historically disagreed. If permitted to intervene, FOP's ability to enter facts into the record or bring in expert testimony at the liability stage could influence the district court's shaping of any remedy or injunctive relief, to FOP's advantage. Without intervention, FOP will not have the opportunity to take any of those advantageous actions—e.g., presenting evidence, introducing witnesses, or making arguments before the court—which will impair its ability to protect the CBA or its other interests, like defending against the Estate's factual allegations. *See Payne*, 27 F.4th at 799–800 (finding that merits-phase litigation could impair a similar organization's interests).

FOP also points out that more than half of the Estate's requested reforms are issues subject to required bargaining between the City and FOP. And according to FOP, as it stands, six of the proposed reforms would violate the CBA outright, substantially weaken its terms and conditions, and impair the wages and benefits negotiated for its members. These potential consequences of its exclusion from the liability phase demonstrate that FOP's exclusion from the suit will possibly impair its substantial legal interests.

### 3. Adequacy of Representation

Finally, FOP argues that the City[1] cannot adequately represent its interests. In fact, FOP says the City stands in direct opposition to its interests not only in the collective bargaining process overall, but also as it pertains to key CBA provisions FOP seeks to protect, like those governing officer discipline and terminations.

When, as here, the proposed intervenor and a party to the suit share the "same ultimate objective," a "presumption of adequate representation" arises. *United States v. Michigan*, 424

---

[1]The City and CPD's chief share counsel in the underlying action.

F.3d 438, 443–44 (6th Cir. 2005). But FOP can overcome that presumption if it shows that the current parties have interests adverse to its own. *Wineries*, 41 F.4th at 774. FOP's burden is again "minimal" in that it need not prove that the City's representation will be inadequate; it need only show that it "'*may be*' inadequate." *Id*. (citation omitted; emphasis added in *Wineries*). "[C]ertainty about future events is not required." *Id.* Indeed, "it may be enough to show that the [City] . . . will not make all of [FOP's] arguments." *Miller*, 103 F.3d at 1247.

FOP argues that the City would not adequately defend policies on "discipline and termination, assignments, wages, investigations, and retirement" at trial or in any remedial phase. (Appellant Br., ECF 13, 34 (citing Compl., R. 1, PageID 36)). Consider first the CBA's 90-day time limit on investigations into citizen complaints against officers. According to FOP, the City has repeatedly tried to remove this time limit and "would have no reason to defend" it. (*Id.* at 21). The CBA also establishes a just-cause requirement which "allows FOP to reverse discipline and specifically terminations that are imposed by the City." (*Id.* at 23). But the City has allegedly tried to undermine the just-cause requirement by contesting it at arbitration and "could actually be rewarded by having it revoked." (*Id.* at 22–23). The reward, worries FOP, is that "the City could gain an edge in negotiations and arbitrations should [the] Estate prevail." (*Id.* at 18).

FOP also argues that the City will not be motivated to use limited trial time to counter any factual allegations against FOP. This claim is substantiated, says FOP, by the fact that the Columbus mayor publicly took pains to differentiate between FOP and CPD, accused FOP of resisting City efforts to end racism, referred to CBA provisions as absurd and shocking, and said that the City needs to examine the discipline and past practices provisions. Moreover, the same City Attorney's office defending the City in this lawsuit wrote to the DOJ that despite "steadfast efforts to advance change, the City has been met with fierce opposition from leadership within the [CPD]," leadership that FOP identifies as "FOP members." (Appellant Br., ECF 13, 44 (quoting Compl., R. 1, PageID 3)). FOP says that such allegations against its leaders are essentially attacks on the policies and provisions the CBA protects, which in turn protect its member-officers. And if the Estate persuades the trier of fact that FOP and the CBA contributed to Lewis's death, then, FOP says, any remedy will eliminate or weaken the very CBA provisions

FOP seeks to protect. Having remained silent on the question of intervention, the City offers no counter-narrative.

On these facts, FOP has established that the City may pursue a different trial strategy than FOP would. And if the Estate and the City settle, then the City might agree to excise some policies, important to FOP and its membership, in exchange for concessions by the Estate. Thus, FOP has shown, at the very least, that the City likely would not make the same arguments FOP would. Like the proposed intervenor in *Miller*, FOP has presented concrete evidence that the City's litigation strategy may meaningfully diverge from the one FOP would pursue. 103 F.3d at 1248 (concluding that when a proposed intervenor sought to appeal a preliminary injunction and the current parties did not, that was enough to show that the parties inadequately represented the intervenor's interest). The circumstances demonstrate that the City's defense possibly will be inadequate to protect FOP's substantial legal interests.

For all the foregoing reasons, FOP has met the requirements of Rule 24(a). And because we find that FOP should have been permitted to intervene as of right, we need not address its argument in the alternative that the district court should have allowed permissive intervention under Rule 24(b).

## IV.

We REVERSE.